### BROTHERHOOD ACCIDENT CO. v. LINEHAN, Ins. Comm'r.

A corporation organized for the purpose of insuring members of the Independent Order of Odd Fellows against disability and death is excluded from the operation of chapter 86, Laws 1895, and cannot compel the issuance by the insurance commissioner of the license provided for therein.

Such a corporation became subject to the provisions of chapter 56, Laws 1891, placing certain associations and orders under the jurisdiction of the insurance commissioner, and was not exempted therefrom by the enactment of chapter 86, Laws 1895.

BILL IN EQUITY, praying that the ruling of the defendant, that the plaintiffs cannot do business in this state without first obtaining a license from him for that purpose, may be declared void and of no effect; that he may be prohibited by appropriate process from attempting to enforce said ruling; that he be restrained from molesting the plaintiffs in the prosecution of their business; otherwise the plaintiffs pray that the defendant may be ordered to issue a license to them as a fraternal beneficiary society, under chapter 86, Laws 1895. The facts were agreed, and the case transferred from the October term, 1900, of the supreme court by *Blodgett*, C. J.

The plaintiffs were duly organized as a corporation under the laws of Massachusetts. The object of the incorporation was and is to insure "members of the Independent Order of Odd Fellows against disability and death resulting from sickness or accident." The by-laws provide that "no person shall be a member of this company or hold a certificate herein unless he is a member in good standing in the Independent Order of Odd Fellows." The plaintiffs issue certificates by which they agree to pay members or their representatives certain sums of money in case of bodily injury and sickness, in consideration of the payment by the members of certain dues and assessments made and determined under the by-laws of the company. The holders of the certificates constitute the membership of the company, and the business is carried on through local branches in the towns and cities of the states in which the plaintiffs are authorized to do business. Each member is required to pay a quarterly due of one dollar and fifty cents, to be used to defray the running expenses of the company. Money accumulating from this source is kept in a special fund, to be used for the legitimate expenses of the company. An assessment is also made upon members to meet the liabilities incurred under the certificates; and any balance not needed for existing liabilities is held in the disability fund, to be used in the payment of subsequent benefits.

The plaintiffs have no other source of income, and are not authorized to expend their funds in any other way or for any other purpose than as hereinbefore stated. All local branches are obliged to conduct their business in secret meetings, in accordance with a ritual furnished by the company, and are required to hold meetings once a month.

March 8, 1900, the plaintiffs applied to the defendant, acting as the insurance commissioner of New Hampshire, for a license to do business in this state as a fraternal beneficiary organization, which request he refused. June 14, 1900, the plaintiffs, having furnished the defendant a full and complete statement of their methods of business and financial standing, and having tendered to him a fee of five dollars as required by section 6, chapter 86, Laws 1895, again applied for a similar license or permit. This application the defendant denied on the ground that the provisions of that chapter do not apply to the plaintiffs. Assuming to have jurisdiction in the matter, he further decided that the plaintiffs could not legally do business in this state without obtaining a license therefor from him under the provisions of chapter 56, Laws 1891; that he should refuse to grant such a license; that any attempt the plaintiffs should make to do business here without having obtained such license would subject their agents to arrest and prosecution; and that in such case it would be his duty to publish a statement in the newspapers to the effect that the plaintiffs were illegally doing business without a license. The commissioner declined to issue a license because the membership of the association is confined to one particular sect or order, and because he did not deem the association "reliable and entitled to public confidence."

Subsequently, upon information that an agent of the company was soliciting insurance in this state, the defendant notified the plaintiffs that if the agent continued to do so he would be prosecuted therefor. Thereupon the agent refused to represent the plaintiffs; and in consequence of the ruling of the defendant and his notice, the plaintiffs have been compelled to relinquish and abandon the prosecution of their business within this state.

*Streeter, Walker & Hollis*, for the plaintiffs. The defendant says that, while the statute of 1895 does not apply to the plaintiffs, they are subject to the burdens imposed by chapter 56, Laws 1891. This raises the question whether the legislature, after having repealed the statute of 1891 by section 15, Laws 1895, so far as it applied to fraternal beneficiary societies, intended in the next sentence to revive it so far as Masonic and Odd Fellow beneficiary societies are concerned. It would seem more probable that the intention was to leave these benevolent societies subject to no su-

pervision by the commissioner, and to make that intention emphatic it was provided that "nothing herein contained shall apply to or *in any way interfere with*" such societies. The evident purpose was to confer a benefit upon them, to encourage and foster their growth and formation, and not to interfere with them in any way. The fact that the repealing clause occurs in the first part of the section and before the exempting clause — a very unusual position — is evidence that the legislature understood that all previous legislation relating to fraternal beneficiary associations was repealed, and that they then desired to exempt the societies specified from the provisions of the new act.

The statute of 1891 is a very stringent statute, while the statute of 1895 is a very liberal one. Did the legislature of 1895 intend to apply the former statute to Masonic and Odd Fellow societies, and the latter to all other fraternal beneficiary associations? It may admit of serious doubt whether chapter 56, Laws 1891, ever applied to societies like the plaintiffs. If it was not intended to apply to them, it follows that it cannot now have that effect. It is a matter of common knowledge that at the time of that enactment so-called assessment bond societies were very numerous. For a very small sum of money they agreed to pay their members a very large sum of money in a very short time. The business they carried on was not based upon sound business principles, and consequently resulted in defrauding innocent people whose desire to acquire money blinded them to the inherent defects in the system, or induced them to engage in a scheme which was nothing more or less than a gambling venture. To suppress these societies and to prohibit their continuance, the legislature of 1891 enacted the statute in question. Before such a society could do business it was obliged to satisfy the commissioner that it was "reliable and worthy of public patronage," that its "methods are worthy of public patronage, and that such corporation . . . is reliable and entitled to public confidence." Thereupon it might obtain a license to do business, which the commissioner was authorized to issue in his discretion. The effect of this law was that all the bond companies doing practically a gambling business were at once driven out of the state, and the business was effectually suppressed.

Whether this enactment applied to fraternal beneficiary associations, conducting their business upon the lodge system and composed exclusively of Odd Fellows, is a question of grave doubt which we do not propose to argue at this time; for, assuming that it might be construed to apply to them, the question is: Has it had any such application since 1895? In other words, did the legislature of that year intend to provide that all other fraternal beneficiary societies organized under the laws of some other state

shall be admitted to do business within this state upon filing with the commissioner certain statements, and that the commissioner shall thereupon "issue to such association a permit in writing authorizing such association to do business within this state," and at the same time and as a part of the same act provide that a fraternal beneficiary association composed of Odd Fellows could only do business here upon satisfying the commissioner that its methods were "worthy of public patronage," and that it was "reliable and entitled to public confidence," provided he could then be induced to grant a license? In the one case the commissioner has no discretion but to grant the society a license or permit when the necessary statements are filed; but in the other it is his duty before granting a license to determine whether in his opinion the society's methods are prudent and entitled to public confidence. Under the law of 1891 he can arbitrarily refuse a license; while under the law of 1895 he cannot refuse a license to a fraternal beneficiary society which has furnished him with the required statements. Under the later statute he cannot exclude an applicant on the ground that its operating expenses are too large, or on the ground that it is not in his judgment "reliable and entitled to public confidence." The former statute lodges very extreme and arbitrary power in the commissioner; while the latter statute gives him little or no authority, so far as the exclusion of fraternal beneficiary societies is concerned.

In view of this analysis of the two statutes, it is inconceivable that the legislature of 1895 should single out fraternal beneficiary societies composed of Odd Fellows, or Masons, or others insuring members of a particular class, and say that these bodies should exist or not according to the mere will or caprice of one man, while all other fraternal beneficiary societies should be entitled to exist and do business in this jurisdiction upon filing with the commissioner certain information relating to their methods of doing business. If there is no reason for such a palpable discrimination, and if, as we believe, the discrimination ought to be the other way, then it is submitted that the evidence deduced from the practical operation of the two acts shows that the legislature of 1895 did not intend to leave the excluded societies subject to the statute of 1891, and that the latter statute was repealed so far as it related to fraternal beneficiary societies.

Suppose a corporation is organized in Montana for the sole benefit of its members and beneficiaries, and not for profit; its membership consists of everybody who may desire to join; it works upon the lodge system, with a ritualistic form of work and representative form of government; it issues certificates for the payment of money upon the happening of certain contingencies, and raises

the necessary money by assessment upon the members. Its system of business may be essentially a fraudulent, gambling scheme; and yet upon the defendant's theory, this society, which is not entitled to public patronage and would be refused a license if the statute of 1891 were applicable, may foist itself upon the people of this state under the liberal provisions of the law of 1895, while a fraternal beneficiary order of Odd Fellows, organized in New Hampshire or Massachusetts and paying accident benefits, may not be allowed to exist except at the special favor of the commissioner, granted in accordance with the statute of 1891. This may be the defendant's theory of statutory construction; but we confidently submit that the legislature never intended such an absurd result, and therefore never enacted such legislation.

Chapter 86, Laws 1895, and the statute of 1891 cannot stand together in their application to fraternal beneficiary societies: (1) because the statute of 1895 purports to be an entire revision of the law relating to such societies; (2) because it in terms repeals all inconsistent legislation; (3) because it then exempts certain societies from its provisions; and (4) because the apparent legislative purpose to especially encourage such societies forbids such a construction. It has always been the policy of this state, as shown by the history of legislation, to encourage and promote the formation and incorporation of benevolent societies composed of Odd Fellows and Masons. They have been regarded as charitable organizations existing for the mutual benefit of the members—not for profit or gain; and the known character of the men composing them has been deemed a sufficient guaranty that no objectionable business methods would be introduced. Did the legislature of 1895 reverse this policy, and say, in effect, that such well-known benevolent societies should be subject to the strict supervision provided in the law of 1891, while all other fraternal beneficiary bodies should be governed only by the liberal provisions of the statute of 1895?

*Eastman & Hollis*, for the defendant.

BLODGETT, C. J.   The statute of 1895, regulating beneficiary societies, orders, or associations, provides that "nothing herein contained shall apply to or in any way interfere with Masonic, Odd Fellow, Knights of Pythias, Red Men, or other similar orders, or any association working on the lodge system which limits its certificate holders to a particular class, or to the employees of any firm, or municipal or other corporation, or to corporations or associations insuring only members of some particular order, sect, profession, or trade." Laws 1895, c. 86, s. 15. Construing this plain,

specific, and emphatic language in the same sense in which it must be deemed to have been used by the legislature,— that is, according to its ordinary and natural import,— the unavoidable result upon the facts before us is to exempt and exclude the plaintiffs from the operation of the statute. If, however, it could be held that section 15 does not exclude associations like the plaintiffs from the benefits of the fourteen preceding sections, it would not entitle them to a decree for a license, because all the associations to which chapter 86 is applicable are now prohibited from doing business within this state unless " the commissioner of insurance is satisfied that such associations are reliable and worthy of public patronage." Laws 1901, *c.* 86, *s.* 2.

The statute of 1895 not being applicable to the plaintiffs, their application for a license under it was properly denied by the defendant. The inquiry then is whether they are subject to the statute of 1891, placing certain corporations, associations, societies, and orders under the jurisdiction of the insurance commissioner, and making it unlawful for them to do business in this state without first procuring a license from him, and also giving him discretion in the granting of such licenses. Laws 1891, *c.* 56. Reading this statute in the light of the plaintiffs' declared object in their articles of association, to insure " members . . . against disability and death resulting from sickness or accident," in connection with the form of certificate issued by them, we think it is sufficiently apparent that the legislative purpose in the enactment was to include such organizations, and that the language of its expression also must be so construed upon the weight of the competent evidence.

Assuming the correctness of this construction of the statute, it follows that the plaintiffs are now subject to it unless they are exempted and excluded from its operation by the statute of 1895, before cited, which expressly declares that it has no application to and does not in any way interfere with them. The consequent effect is to leave the plaintiffs where the statute of 1895 found them — that is to say, subject to the statute of 1891. It is true, nevertheless, that there is evidence tending to show that this was not the legislative purpose ; but interpretation has its limits beyond which it cannot legitimately go, and while the primary object in the interpretation of a statute is to ascertain the legislative intent in its enactment, it will not be carried to the extent of giving to it a meaning plainly repugnant to its terms. " When the requirements of a constitutional statute are plain and positive, courts are not called upon to give reasons why it was enacted." *Weeks* v. *Waldron,* 64 N. H. 149, 150: In such a case, " the legislative will as expressed cannot be disregarded." *Martin* v. *Swanton,* 65 N. H. 10, 11.

No objection being made to the plaintiffs' form of procedure, it is not considered.

*Bill dismissed.*

WALKER, J., did not sit: the others concurred.