Hillsborough, }
March 6, 1917. }

ALPHONSE LIZOTTE v. THE NASHUA MANUFACTURING COMPANY.

An employee, whose entire work was required to be done in a storehouse where there was no power-driven machinery or hoisting apparatus, was not engaged in work specified by the employers' liability act (Laws 1911, c. 163, s. 1 (b)), though the building was within the enclosure of a mill.

CASE, upon the employers' liability act for personal injuries. Trial by jury and verdict for the plaintiff. At the close of the plaintiff's evidence the defendants moved for a nonsuit on the ground that a cause of action had not been shown. The nonsuit was denied, and the defendants excepted. The facts appear in the opinion. Transferred from the May term, 1916, of the superior court, by *Peaslee*, J.

*Doyle & Lucier*, for the plaintiff.

*E. C. Stone* (of Massachusetts), *Albert Terrien*, and *Branch & Branch* (*Mr. Frederick W. Branch* orally), for the defendants.

PLUMMER, J. Section 1 of chapter 163 of the Laws of 1911, so far as applicable to this case, is as follows:

"This act shall apply only to workmen engaged in manual or mechanical labor in the employments described in this section, which, from the nature, conditions or means of prosecution of such

work, are dangerous to the life and limb of workmen engaged therein, because in them the risks of employment and the danger of injury caused by fellow servants are great and difficult to avoid. . . . (b) Work in any shop, mill, factory or other place on, in connection with or in proximity to any hoisting apparatus, or any machinery propelled or operated by steam or other mechanical power in which shop, mill, factory or other place five or more persons are engaged in manual or mechanical labor. . . . As to each of said employments it is deemed necessary to establish a new system of compensation for accidents to workmen."

Section 2 relieves workmen engaged in any of the employments described in section 1 from the assumption of risks incident to their employment, and permits them to maintain actions on account of personal injuries by accidents arising out of and in the course of their employment, caused by the negligence of fellow servants.

Previous to this statute workmen assumed all the dangers of their employment which they knew about, or ought to have known about; and they could not maintain actions for accidents caused by the negligence of fellow servants. The application of these rules of law under modern industrial conditions subjected workmen to great hardships, and it was one of the purposes of the legislature to relieve employees from the burdens imposed upon them by the assumption of risk and fellow servant doctrine, by devising a new scheme of compensation for accidents happening in certain dangerous employments enumerated in section 1.

The plaintiff seeks to maintain his action under that portion of section 1 above quoted. He was employed as a truckman in the defendants' one story storehouse, handling and transporting boxes of finished cloth ready for shipment on a hand truck about the storehouse, and onto the loading platform. At no time did his work take him to any part of the mill, nor was he required to do any other work in any other part of the defendants' plant.

There was no power-driven machinery or hoisting apparatus in the storehouse, which was situated apart from the factory buildings where the manufacturing was done, but it was within the same enclosure as the other buildings of the company, and there were some fifty men working therein at the time of the accident.

In order for the plaintiff to recover under this statute, his work must have been in the mill, and further it must have been performed "on, in connection with or in proximity to any hoisting apparatus, or any machinery propelled or operated by steam or other mechanical

power." Under the decision in *Boody* v. *Company,* 77 N. H. 208, it might well be held that the plaintiff was working in a mill. In that case the court said: "The word 'mill' may be used as meaning a building in which manufacturing is carried on. It is, however, often used as meaning a manufacturing establishment, and when used in this sense it includes all that is usually intended by the plant of a manufacturing concern; *that is, it includes not only the buildings in which the work is done, but everything appurtenant to them.* . . . As there is nothing to rebut this presumption, it must be held that 'mill', as used in section 1, includes not only the building in which the defendants' business is carried on, but their dam, flume, yard, and the ways they provide for the use of their employees." This interpretation of the statute applied to the present case would constitute the defendants' storehouse, where the plaintiff was employed, a part of the defendants' manufacturing plant; and employment in it would satisfy the provision of the law that the work must be performed "in any shop, mill, factory or other place." But the second requirement of sub-division (b) is as important and vital as the first, namely, that the work must be "on, in connection with or in proximity to any hoisting apparatus, or any machinery propelled or operated by steam or other mechanical power," and the plaintiff's employment did not fulfil this requirement of the law. He had no occasion to go into the mill where there was power-driven machinery. His work was entirely in the storehouse in which there was no machinery or hoisting apparatus. He was as free from the dangers and risks incident to employment about power-driven machinery as he would have been, if he had been employed upon a farm miles away from the defendants' manufacturing plant. Such employment does not come within the purview of the statute. The application of the act was specifically limited to workmen engaged in manual or mechanical labor in the employments therein described, and these employments are such as are rendered dangerous by reason of the conditions and the instrumentalities employed in the prosecution of the work.

A construction of the statute that would bring within its scope a workman employed in a storehouse in which there was no power-driven machinery, and whose duties did not require him to enter a mill in which such machinery was used, would render nugatory an essential portion of the law, which must have been of controling influence in the enactment of the statute, for its declared purpose was to aid and benefit workmen whose work was rendered dangerous by

reason of their employment in mills where power-driven machinery was operated. Subdivision (b) describes not only the place where the work must be performed, but also the kind of work that must be done to entitle workmen to the benefits of the act, and to be so entitled a portion of their work at least must be performed within the danger zone created by the instrumentalities enumerated therein.

While this is a remedial statute and should, therefore, receive a liberal construction (*Rich* v. *Flanders*, 39 N. H. 304; *Holt* v. *Smart*, 46 N. H. 9; *Stebbins* v. *Insurance Co.*, 59 N. H. 143), it cannot be given "a meaning plainly repugnant to its terms." *Brotherhood Accident Co.* v. *Linehan*, 71 N. H. 7. "The language of the statute is plain, and the legislative will as expressed cannot be disregarded." *Weeks* v. *Waldron*, 64 N. H. 149; *Martin* v. *Swanton*, 65 N. H. 10.

The plaintiff contends that the case at bar is not different from *Boody* v. *Company*, *supra*. We cannot agree with this contention. Boody was employed as a handy man about the factory, he had no particular place to work, but he might be called upon to perform work anywhere in the mill, hence some of his work inevitably must have been "on, in connection with or in proximity to" power-driven machinery. He was, therefore, engaged in employment (b), and the court held that, as the plaintiff was so employed, and was killed by an accident arising out of and in the course of his employment, the action to recover damages for his death could be maintained, even though his death was not caused by the negligence of fellow servants, or by one of the risks incident to work "on, in connection with or in proximity to" power-driven machinery. We believe this broad and liberal construction of the statute, considering its remedial nature, was correct. This interpretation, however, cannot aid the plaintiff, for the facts do not bring his case within its scope. The difficulty with the instant case is that the plaintiff was not engaged in employment (b). If a portion of the plaintiff's work had been in the defendants' mills where there was power-driven machinery, and some of his work had been in the storehouse, and he had been there injured, then his case would be more nearly analogous to *Boody* v. *Company*. In the opinion in the above case is the following sentence, upon which the plaintiff relies: "Any person, therefore, who is engaged in manual or mechanical labor in any shop, mill, factory, or other place, by whatever name known, in which shop, mill, factory, or place power-driven machinery is used and five or more persons are employed, is engaged in employment (b) and is entitled to the bene-

fits of the act if he is injured 'by accident arising out of and in the course of the employment.' " The question under consideration and with reference to which this statement was made was whether an employee in class (b) was entitled to recover for an injury from an accident arising out of or in the course of his employment, although not due to the perils of power-driven machinery. It was held that he could. But there is no suggestion that he could recover if his sole employment was in a "shop, mill, factory or other place," in which power-driven machinery was not used. The plaintiff's employment not being within the purview of the statute, this action cannot be maintained.

*Exception sustained: verdict set aside: judgment for defendants.*

PEASLEE, J., did not sit: YOUNG, J., dissented: the others concurred.