## MANCHESTER ST. RY. v. BARRETT.

(Circuit Court of Appeals, First Circuit. May 18, 1920.)

No. 1445.

1. **Release** ⚷➝24(1)—**Validity may be contested in suit at law.**

In view of Judicial Code, § 274b, as amended March 3, 1915 (Comp. St. § 1251b), providing for equitable defenses at law, a release invalid for fraud and incapacity is not a bar to an action for damages until set aside in equity.

2. **Appeal and error** ⚷➝1033(5)—**Instructions as to proving invalidity of release held favorable to defendant.**

Instructions that the burden was on plaintiff to establish by clear and convincing evidence that the signer of a release was not conscious of what he was doing are, if anything, too favorable to defendant, and he cannot complain thereof.

3. **Master and servant** ⚷➝278(19)—**Evidence of violation of rule held to warrant a finding of negligence.**

Evidence of violation of a street railway rule requiring cars to slow down and sound gong when passing another car which was running slowly is sufficient to warrant a finding of negligence in an action for the death of an employé, who had just stepped from behind a car which slowed down to permit him to alight.

4. **Master and servant** ⚷➝289(4)—**Contributory negligence held for jury.**

An employé can rely on a rule requiring a passing car to slow down, so that the question of his contributory negligence in stepping from behind one car in front of another is for the jury, especially under a state Employers' Liability Act, placing the burden of proving contributory negligence on the employé.

5. **Master and servant** ⚷➝375(2)—**Injury to street car motorman going to dinner "arises out of and in the course of his employment," within Compensation Act.**

Where a street car employé, who was injured by a car just as he was alighting from the one on which he was riding home to dinner, between his morning and afternoon hours of duty, his injuries arose out of and in the course of his employment, within Employers' Liability Act N. H. §§ 1, 2.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

6. **Master and servant** ⚷➝348—**State Compensation Act should be liberally construed.**

The New Hampshire Employers' Liability Act, like compensation acts generally, is a remedial act, and is to be liberally construed; its underlying policy being that some fair part of the economic loss caused by industrial accidents shall be borne by the industry.

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action by Ellen Barrett, administratrix, against the Manchester Street Railway. Judgment for plaintiff, and defendant brings error. Affirmed.

---

⚷➝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

De Witt C. Howe, of Manchester, N. H. (George H. Warren and Warren, Howe & Wilson, all of Manchester, N. H., on the brief), for plaintiff in error.

Alexander Murchie, of Concord, N. H. (Murchie & Murchie, of Concord, N. H., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This was an action brought by the administratrix of William J. Allen against the Manchester Street Railway to recover damages for personal injuries and the resultant death of the plaintiff's decedent.

Allen was a motorman in the defendant's employ, and was injured on Sunday, December 21, 1913, at about noon.

The action was brought under the New Hampshire Employers' Liability Act. Laws N. H. 1911, c. 163, §§ 1, 2. This act permits recovery for injuries suffered by employés engaged in the operation of electric cars, when such injuries arise "out of and in the course of the employment" and are caused "by the negligence of the employer or any of his or its officers, agents, or employés."

The defendant pleaded the general issue and a release executed by Allen on March 14, 1914, about three months after his accident. To this plea the plaintiff filed a replication, setting up: (1) That the release was not Allen's deed; (2) that it was obtained by fraud. The defendant joined issue on this replication. The trial resulted in a verdict for the plaintiff for $2,600, and the defendant brought this writ of error.

The salient facts which the jury were warranted in finding are, briefly stated, as follows:

At the time of the accident, Allen's forenoon run ended at 11:15, and his afternoon run began at 2:30. Within the intervening period he was accustomed to go home to his noon meal, riding, as of right, and in accordance with the established custom among the defendant's employés, upon the defendant's cars. His house was on the north side of Lake avenue, about midway between two regular stops. It was customary for the motorman to slow down the car in order to allow Allen, and at times members of his family, to drop off opposite his home. There was no rule of the company forbidding such slowing down of cars to permit employés to swing off.

A rule of the defendant company provides as follows:

"*Cars Stopped or Running Slowly.*—When passing cars that are not moving, motorman will bring his car to a stop, and will not start until he receives two bells from the conductor. *When passing a car that is moving slowly, motorman must also run slowly, ringing his gong and going very carefully.*"

The negligence relied upon is the failure of the motorman on the car that struck Allen to comply with the latter part of this rule, printed in italics.

On this Sunday, the car on which Allen was riding slacked to 3 or 4 miles an hour; opposite his house Allen swung off the car, and in order to reach his house had to cross the other or west-bound track.

Just as he passed behind the car from which he had alighted, which was moving slowly away from him, a car coming in the opposite direction, which ordinarily was met further out on the trip, shot by without slacking or sounding any gong.

While the evidence shows that Allen saw or heard this car and drew back, he failed to get himself out of range; the car struck him, hurled him some 20 feet, and ran 130 feet or more before it finally stopped. The car was of steel and equipped with unusual power for winter work.

There was evidence that the car which struck him was running at the rate of 25 miles or more an hour, and was speeding up in order to take a rise further along. Allen was rendered unconscious by the blow; his skull was broken. For the next 2 or 3 months he at times had hallucinations; he spit blood; he expressed a desire to kill members of his family and himself; he walked in the snow in his bare feet; he did many other things indicating that the blow and fracture of his skull had destroyed or seriously impaired his mental grasp.

In March, however, he had made a partial recovery, and desired to resume work for the defendant. The defendant company's claim agent thereupon induced him to execute a release, paying him in cash an amount equal to what his wages would have been, and assuming also the doctor's and hospital bills. The release was not under seal. The evidence warranted the jury in finding that the claim agent knew Allen was not mentally fit to understand the nature and significance of his act in signing this release. The defendant does not argue that the evidence did not warrant the jury in finding the release invalid.

Defendant's counsel argue their assignments of error under three heads. We follow this classification.

I. Defendant contends that the release was a bar to the action unless and until set aside in equity.

[1] As pointed out above, the defendant joined issue on the plaintiff's replication, which sets up that the release was not Allen's deed and that it was obtained by fraud. It did not demur to this replication. It made no contention that the validity of the release should not be tried as a part of this suit at law, until the evidence of the plaintiff was in. But, if we assume that the point was not thus waived, and is now open to the defendant, it is without merit. See Union Pacific Railway v. Whitney, 198 Fed. 784, 117 C. C. A. 392; Union Pacific Railway v. Harris, 158 U. S. 326, 15 Sup. Ct. 843, 39 L. Ed. 1003; Genest v. Odell Mfg. Co., 75 N. H. 365, 74 Atl. 593; Piper v. Railroad, 75 N. H. 228, 72 Atl. 1024. Compare the amendment of March 3, 1915 (38 Stat. 956), to section 274b of the Judicial Code, 38 Stat. 956 (U. S. Comp. Stat. 1916, § 1251b), providing for equitable defenses in actions at law; also U. S. v. Richardson, 223 Fed. 1010, 1013, 139 C. C. A. 386.

[2] The question of the validity of the release was submitted to the jury under instructions to the effect that the burden was upon the plaintiff to establish by clear and convincing proofs that Allen was not conscious of what he was doing in its comprehensive and substantial

sense; that this required something more than a mere preponderance of evidence; that the jury must be convinced that Allen "was not in a condition to appreciate the thing that is set up against him."

The defendant has no cause to complain of these instructions as to the character and degree of proof required; it is far from clear that they were not too favorable to the defendant.

II. Defendant's second contention is that a verdict should have been directed in its favor.

[3] In support of this main contention it is argued that the defendant was not negligent. But clearly there was evidence warranting the jury in finding negligence. The rule requiring a motorman, when passing a car moving slowly, also to run slowly, ringing the gong and going very carefully, was intended to guard against just such accidents as caused Allen's injury.

[4] But the defendant also contends that, even if the defendant was negligent, Allen was guilty of contributory negligence. This was for the jury. Allen knew of the rule, and had a right to rely upon its being complied with. Under the New Hampshire Employers' Liability Act, supra, the defendant has the burden of proof on this issue. Even if the evidence were evenly balanced, the plaintiff might recover. Murphy v. Railroad, 77 N. H. 573, 94 Atl. 967; Nawn v. Railroad, 77 N. H. 299, 305, 91 Atl. 181. As pointed out in this latter case, the burden being now upon the defendant, "the cases would seem to be few in which the judgment" of the jury "must not be invoked."

The defendant's contention, of course, is that Allen should have seen the car and kept back out of its line of approach. But the space between the car from which he had alighted and the car which struck him was only 8 or 10 inches. The approaching car might have been found to be running at the rate of 25 miles an hour or more. There was snow on the ground. The only negligence imputable to Allen was his failure to look for a second, or perhaps a fraction of a second, within which time he was stepping from behind the rear of the car from which he had alighted within the range of the swiftly oncoming car. It was for the jury to say whether, in the light of his knowledge of the rule requiring such oncoming car to move slowly and to sound the gong, of his knowledge that the car was usually met further out, and of the fact that he was accustomed to alight from this car and safely cross to his house, his failure within this brief instant of time to see and avoid this approaching car was or was not contributory negligence.

[5, 6] Defendant also contends that the case does not come within the New Hampshire Employers' Liability Act on the ground that the accident did not arise "out of or in the course of the employment."

This assignment is without merit. It calls for no elaborate discussion. Allen rode home on the defendant's car and alighted therefrom as an incident of his employment. He was not out as a pleasure seeker or as a church-goer. He was a motorman going to his dinner. Under such circumstances, the overwhelming weight of authority is that the injury was suffered as a natural incident of his work. The New Hampshire Employers' Liability Act, like compensation acts

generally, is a remedial act, and is to be liberally construed. See Lizotte v. Nashua Mfg. Co., 78 N. H. 354, 357, 100 Atl. 757; Morin v. Nashua Mfg. Co., 78 N. H. 567, 569, 103 Atl. 312; Boody v. K. & C. Mfg. Co., 77 N. H. 208, 90 Atl. 859, L. R. A. 1916A, 10, Ann. Cas. 1914D, 1280.

The underlying policy of the modern Compensation and Employers' Liability Acts is that some fair part of the economic loss caused by industrial accidents shall be borne by the industry. Allen's accident was plainly an industrial accident; at any rate there was evidence warranting the jury in so finding. It is enough to cite a few of the numerous cases dealing with this point: Donovan's Case, 217 Mass. 76, 104 N. E. 431, Ann. Cas. 1915C, 778; Sundine's Case, 218 Mass. 1, 105 N. E. 433, L. R. A. 1916A, 318; Hallett's Case, 232 Mass. 49, 121 N. E. 503. In these opinions many of the large number of other cases are cited and discussed. See, also, article in 25 Harvard Law Review, p. 401, by Francis H. Bohlen, in which there is an elaborate and learned discussion of the phrase found in most of the Compensation Acts, "arising out of or in the course of employment," citing and reviewing the leading cases.

III. Finally, defendant's counsel contend that the jury was erroneously instructed.

We find no merit in this contention. Indeed, the defendant's requests for instructions, except so far as included in the contentions discussed above, were in substance—very nearly in words—given. The charge was careful and accurate, and fully protected all the defendant's rights.

The judgment of the District Court is affirmed, with costs to the defendant in error.