THE STATE v. J. S. FREELAND, Appellant.—300 S. W. 675.

Division Two, December 12, 1927.

*Hiett, Lamar & Covert* for appellant.

*North T. Gentry,* Attorney-General, and *A. B. Lovan,* Assistant Attorney-General, for respondent.

DAVIS, C.—The Prosecuting Attorney of Texas County filed in the circuit court a verified information charging defendant (a deputy fish-and-game warden) with killing fish in Jack's Fork of Current River on September —, 1926, by exploding dynamite therein. On change of venue to Phelps County the jury returned a verdict of guilty, assessing the punishment at a fine of six hundred dollars, defendant duly appealing to this court.

The information is based on Section 5616, Revised Statutes 1919. There is no controversy as to the facts. Their salient features develop that the Game-and-Fish Commissioner of the State of Missouri authorized and instructed his assistant Fred J. Foster, in charge of and an expert on fish, to take charge of the removal of undesirable fish from the public waters of the State, and in pursuance thereof promulgated a regulation relative to the use of dynamite for such purpose. The defendant was a deputy fish-and-game warden assigned to certain counties, among which was the County of Texas. It seems that a certain water hole of Jack's Fork became infested with gar, which destroy food and game fish, and that certain citizens residing in the community desired the gar removed. The citizens advised with defendant, who wrote Keith McCanse, the Game-and-Fish Commissioner of the State, relative to the matter and he referred it to Foster. Thereupon Foster, answering the letter, ad-

vised the course to be pursued in a letter, omitting caption and signature, as follows:

"I have your letter of the eleventh in regard to dynamiting gar. At any time you catch them congregating in schools, you may go ahead and dynamite or use any other means to destroy them. Watch carefully to see that you are not destroying game fish."

We herewith insert a paraphrase in rhyme of the assistant commissioner's letter of instructions to defendant, the result of an inspiration penned by the learned Assistant Attorney-General, Mr. Lovan, interpreting the letter as permitting the taking of the pound of flesh, but proscribing the spilling of a drop of blood, reading:

"Mr. Deputy in charge of fish,
    You are informed it is my wish,
That you take some dynamite in your flivver
    And proceed to Jack's Fork River.
And, standing on the gravelly bar,
    Cast in the shots to kill the gar.

"But when you execute this command,
    Don't forget the law will demand
That while killing a gar, you must not harass
    A single sucker, catfish or bass.
You must obey instructions without fail
    Or run the risk of going to jail."

The evidence develops that gar hinder and prevent the propagation of game and food fish. A number of witnesses testified that the water hole of Jack's Fork mentioned had become infested with gar. It also develops that the State Game-and-Fish Commissioner construed Section 5652, Revised Statutes 1919, to give him authority to use dynamite in the destruction of fish which hinder and prevent the propagation of food and game fish, and that the commissioner so instructed his deputy. Pursuant to the letter of Foster, defendant gathered together a number of residents of the community, going to the particular water hole and dynamiting it. The water hole was from two hundred to two hundred and fifty yards in length, running from shallow water to a depth of fifteen feet or more. Upon dynamiting the hole the result showed the death of a dozen to fifteen fish, among which were ten to twelve suckers, two small bass and a few small perch. The result further showed the killing of a few small gar. The only statutes that bear on the question are Sections 5615, 5616, 5622 and 5652, Revised Statutes 1919. They are as follows:

"Sec. 5615. *Explosives prohibited—penalty.*—The use of dynamite or explosives in any of the waters of this State is prohibited ex-

cept by the special permission and under the supervision of the state game and fish commissioner, and then only for mining or mechanical purposes, or to recover the bodies of persons. Any person, firm or corporation offending against any of the provisions of this section shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than five hundred dollars nor more than one thousand dollars for each offense.

"Sec. 5616. *Poison and explosives not to be used to kill fish—penalty.*—No person shall place or use in any of the waters of this State any medical drug, any *coculus indicus,* or fish berry, or any other poisonous thing or substance, calculated to poison, kill, or injure any fish, nor shall by such means kill, catch or take any fish that may be in said waters, and no person shall place any dynamite, giant powder, nitroglycerin, or any explosive substance of which nitroglycerin composes a part, or any other explosive substance or preparation in any of the waters of this State, whereby any fish that may be in said waters may be killed, injured, or destroyed, and no person by any such means shall kill, catch or take any fish from said waters. Any person who shall violate any of the provisions of this section, shall on conviction be adjudged guilty of a felony and punished by imprisonment in the penitentiary for a term not exceeding two years, or by imprisonment in the county jail not less than thirty days, or by fine not less than one hundred dollars, or by both such fine and imprisonment.

"Sec. 5622. *Logging, rock or hand fishing.*—It shall be unlawful for any person or persons to take, catch or kill any fish in any of the waters of this State by means of 'logging' or 'rock fishing.' *Provided further,* that fish known as hickory shad and grinnel and gar may be killed at any time with a gig.

"Sec. 5652. *May remove fish, when.*—The state game and fish commissioner may take at such time and in such manner from public waters of this State fish which, in his judgment, hinder or prevent the propagation of game or food fish, or when fish are in danger of perishing. Such removal shall be effected by such means and under such regulations as the state game and fish commissioner may provide. So much of such money realized from the sale of fish so removed may be used by the state game and fish commissioner in continuing the work of removal, and all surplus money must be turned into the game protection fund. The Missouri fish commission may take or cause to be taken under the supervision of the state game and fish commissioner any fish from public waters in any manner, at any time, for any purpose connected with the fish culture or with scientific observation."

I. The sole determinative question is the presence of sufficient probative facts in the record to uphold the verdict of guilty. It involves the construction of certain statutes appertaining to fish in the public waters of the State. We gather from the body of what is commonly called the game-and-fish statutes the design to propagate and preserve food and game fish for the benefit and edification of the public. It is plain from the statutes that the State has asserted title to fish for the public good, releasing title, however, at certain and proper designated seasons to such of the public as through effort and skill and by lawful means and manner reduce the fish to actual possession. The reduction to possession other than as a true sportsman according to rules laid down by the statutes is proscribed. The hog of the stream is denounced by a code of ethics which he must either obey or subject himself to the consequences. These rules besides affording fish a sporting chance and an opportunity to propagate tend to preserve to the residents of this State the advantage of exercise, diversion and food.

The purpose of the game and fish statutes is to propagate and preserve such fish as benefit mankind. It follows that the State by enacting prohibitory statutes has adopted the policy of fostering reproduction of game and food fish. In furtherance of its policy the State has declared such fish as in the judgment of the commissioner hinder or prevent the propagation of food or game fish may be taken from the public waters. Inasmuch as the State can only act through representatives, it has properly assigned the care and propagation of fish to the commissioner.

When different sections of the statutes bear on a subject, it is a rule of construction that such sections must be harmonized if possible. Section 5616 provides that no person shall place any dynamite in the waters of this State whereby any fish may be killed, injured or destroyed, and no person by any such means shall kill, catch or take any fish from said waters. Section 5615 proscribes the use of dynamite in any of the waters of this State except by special permission and under the supervision of the State Game-and-Fish Commissioner and only for mining or mechanical purposes or to recover the bodies of persons. While these two sections seem to be comprehensive, we construe them as applicable only to those acting in a private capacity. Reading these two sections in connection with Section 5652, that construction is confirmed. With the avowed purpose on the part of the State to propagate and maintain game and food fish for the benefit of the public, the Game-and-Fish Commissioner is empowered to take at such time and in such manner from the

public waters of this State fish which in his judgment hinder or prevent the propagation of game or food fish. He is further empowered to remove such fish by such means and under such regulations as he may provide. His judgment is paramount. This section gives him plenary authority and discretion as to the means to be used. It is evident from a reading of Section 5622 and the evidence that gar hinder and prevent the propagation of game and food fish. By the letter authorizing the use of dynamite in the water hole in question, the commissioner declared and exercised his judgment as he was empowered to do. Given the right to take fish in such manner and by such means as he thought best, we think the statutes contemplate the use of dynamite in furtherance of the purpose of the statutes. Given the power to take outlaw fish, the power included the right to take them by whatever means the commissioner exercising his honest judgment thought expedient. Acting upon information received from his deputy, his judgment was that it was in the interest of the propagation of game and food fish to dynamite the particular water hole infested with gar. That game or food fish were killed in carrying out the purpose of the statutes is beside the question. If the commissioner's judgment dictated that the dynamiting of the water hole fostered the propagation of game and food fish, the killing of game and food fish in the interest of the propagation of the species was merely incidental. This is accentuated by the departmental construction placed upon the statutes that to propagate food and game fish, the public waters of the State may be dynamited to kill fish which hinder or prevent the propagation of game and food fish. While such construction is only persuasive, still where the construction comports with the policy and the salutary purpose of the law and is promulgated in the interest of the propagation and preservation of game and food fish, it is entitled to some weight. We think both the letter and the spirit of the law authorize the use of dynamite in destroying certain fish when according to his sincere judgment the State Game-and-Fish Commissioner thinks that such fish hinder or prevent the propagation of game or food fish.

It follows that the judgment is reversed and the defendant is discharged. *Higbee* and *Henwood, CC.*, concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur, except *Walker*, *J.*, who dissents.