ED BETZ, RESPONDENT, v. COLUMBIA TELEPHONE COMPANY, APPELLANT.

Kansas City Court of Appeals.   January 27, 1930.

*Major & Alexander* for respondent.

*Dumm & Cook* for appellant.

BOYER, C.—This case originated before the · Workmen's Compensation Commission. Respondent filed a claim for the allowance of compensation on account of an injury received by him arising out of and in the course of his employment by the appellant. The claim was filed February 11, 1928, in usual form and shows that the employee was injured "while letting off strain on winch used for pulling in cable when handle slipped out of hands striking him in the mouth." The permanent injury claimed was the loss of thirty-one teeth.

Answer was filed and, among other things, "all of the statements in the claim for compensation are admitted except the following:

"1. Injured disabled from August 31 to September 24, 1927, 3 weeks compensation at $20 per week amounting to $60 paid. Also medical bill of $152.

"2. There is no permanent disability.

"3. Where permanent injuries which are not included in schedule contained in section 17 of the Missouri Workmen's Compensation Act, are claimed it is provided in section 17 that such injuries must cause loss of earning power. In this case no loss of earning power can result from loss of teeth."

The answer was signed by the insurer.

The case was heard before one of the members of the commission in the city of Columbia, and on the 15th day of March, 1928, said commissioner filed with the commission his report of the case containing rulings of law, statement of facts, compensation due, and the award made.

The findings of fact correspond with the claim made; and show that claimant had been permanently injured by the loss of thirty-one teeth, that his average weekly wage was $30, and that claimant was entitled to weekly compensation of $20, and further compensation due as follows:

"47½ weeks permanent partial disability at $20 per week $ 950.00
"For disfigurement for replacement of front teeth with artificial teeth     50.00

| | |
|---|---|
| "Total | $1000.00 |
| "Paid by employer or insurer, 3 weeks at $20 per week | 60.00 |

"Balance due employee to date     $940.00"

The award was made accordingly in favor of the employee and against the employer and insurer, including medical aid in the sum of $152 paid.

Thereafter, on application of appellant, the award was reviewed by the whole commission and on the 21st day of May, 1928, the commission made its final award in favor of the employee and against the employer and insurer as follows:

"For medical aid the sum of     $152.00
"For permanent partial disability the sum of $20 per week for 47.5 weeks     950.00
"For disfigurement a lump sum of     50.00

"Each of said payments to begin as of September 1, 1927, and to be payable and be subject to modification and review as provided in said Act."

On appeal to the circuit court of Boone county the case was certified, and heard. The award made by the commission was affirmed. From this judgment the defendant duly appealed.

## OPINION.

Appellant admits all the facts set out in the claim except the value of the compensation which the employer specifically denies. The points urged on appeal are (1) that under section 17 (a) of the Workmen's Compensation Act, Laws 1927, page 501, compensation is allowable for injuries not specifically listed only where there is a permanent disability resulting in *loss of earning capacity;* (2) that compensation for disfigurement under the same section is allowable

only where the disfigurement results in a handicap to the employee in obtaining employment. There are other variations of the same assignments.

At the hearing before the commissioner the proceeding was brief and informal. The employee appeared in person, and one R. W. Johnson appeared for the employer and for the insurer. It was admitted by Mr. Johnson that the employee had lost thirty-one teeth. The claimant testified to the manner in which he was injured and the loss of his teeth; that he had been compensated for three weeks' time and had not been out any sum for medical cost; that he had been employed by the Columbia Telephone Company for twenty-four or twenty-five years; that he was making about $32.50 per week at the time of the accident and was then making the same amount; that he was away from work three and one-half weeks; and in regard to his ability to work said there was a difference in some ways, "one thing, I had stomach trouble and since I have had my teeth out, I have not been able to get my food to digest;" that he was then doing the same work that he did before the accident; that his teeth were all in good condition before the accident; that the company had not guaranteed to give him a lifetime job; that he had never had any trouble with his gums and that his teeth were in perfect condition before the accident.

The manager for the telephone company testified that claimant was still in the employ of the company; that he was being paid the same wages as before, and when asked whether or not he observed any difference in the performance of the duties of claimant, he said: "I think he is doing a good work." And that he thought claimant appeared to be in the same condition he was before the accident.

Dr. Stephenson, a dentist, was asked this question:

"Q. Give a man who has from his education only qualified to earn his living by manual labor, given that man with his teeth extracted by some cause, has his earning power, in so far as earning a living been in any way impaired? A. If his teeth are fitted properly and he can chew his food, if he can chew it so his stomach will not have excess work to do, it is not impaired."

He further testified that it had been his experience that the majority of people after having their teeth extracted are able to pursue their regular duties the same as before. He further said in answer to these questions:

"Q. In your opinion can any teeth be placed in a mouth as well as the original teeth? A. I would rather have my original teeth.

"Q. Is it not a fact that false teeth will sometimes affect the power of speech? A. Yes, sir, to some extent.

"Q. Will it affect his chewing ability? A. To some extent, yes. sir."

He further testified that dentists would charge all the way from $50 to $500 to replace teeth; that the usual price in Columbia he thought was about $25 a plate; that most plates are made with vulcanite rubber and with porcelain teeth; that there was a very large difference in prices of the metal plates; that in ordinary cases he used vulcanite rubber. The record shows that the claimant had been paid compensation for three weeks disability and that the insurer and the employer paid medical bills to the amount of $152.

In the first point made on appeal, the contest centers upon a construction or interpretation of that part of section 17 (a), Laws of Missouri 1927, page 501, allowing compensation for "permanent injuries" other than the ones specified in the section. Said section 17, as indicated by its title, provides compensation for "permanent partial disability," and "compensation for various injuries," and the method of computation. It is divided into two subsections, (a) and (b). The first part of subsection (a) provides compensation for a definite number of weeks for forty-six specified injuries, and immediately following the specified list is the portion of the section, the meaning and application of which is called in question in this case. It reads as follows:

"For permanent injuries other than those above specified, the said compensation shall be paid for such periods as are proportionate to the relation which the other injury bears to the injuries above specified, but no such period shall exceed four hundred weeks. Such other injuries shall include permanent injuries causing a loss of earning power. The total permanent loss of the use of an arm, hand, thumb, finger, leg, foot, toe or phalange shall be considered as the equivalent of the loss by separation of the arm, hand, thumb, finger, leg, foot, toe or phalange and compensation shall be paid for the same period as for the loss thereof by separation. For the permanent partial loss of the use of an arm, hand, thumb, finger, leg, foot, toe or phalange compensation shall be paid for the proportionate loss of the use of such arm, hand, thumb, finger, leg, foot, toe or phalange. If an employee be seriously mutilated or permanently disfigured about the face or head, the commission may allow such additional sum for compensation on account thereof as it may deem just, based upon the handicap suffered by the injured employee in obtaining employment, but such sum shall not exceed $1000."

Appellant contends that no award is permissible for the injury in this case unless it resulted in a loss of earning power, and that the evidence shows that there was no loss of earning power because the employee returned to his former employment at the same wage theretofore received.

The respondent contends that a loss of earning power need not necessarily result in this case to entitle claimant to compensation;

that he is entitled to such compensation because he has sustained a permanent injury, which has destroyed a part of the physical structure and functions of his body; that this injury is compensable, regardless of the fact that he re-entered employment at his previous wage; and that the evidence shows he has nevertheless suffered a loss of earning power. The contest rages over this sentence: "Such other injuries shall include permanent injuries causing a loss of earning power."

Appellant contends that it excludes claimant from recovery and, in effect, contends that these words limit and control the preceding sentence, and apply to all permanent injuries referred to in it. In other words, appellant would have this sentence read: "Such other injuries shall include (only) permanent injuries causing a loss of earning power." It must be admitted that the intent and purpose of this sentence, due to its location and phrasing, is ambiguous, obscure, and not easy to decipher. But we cannot agree with appellant in the limitation and meaning placed upon it, or to appellant's right to interpolate the word "only" in the sentence, in order to make it exclude all other permanent injuries from being compensable. We arrive at this conclusion mainly by an observation of the preceding part of the section; and from a consideration of the manifest intent and purpose of the entire act as expressed in the title and the various other sections. It will be observed that in section 17, various specific injuries are set forth for which compensation is permissible, and no limitation or requirement is made that any injury so named must be such that the result is a loss of earning power; and it is apparent that many of such specific injuries so named would not necessarily result in, or cause, a loss of earning power. Where a statute enumerates various injuries which are compensable unconditionally and is immediately followed by a provision for "other injuries," the last injuries provided for will be read as *ejusdem generis* with and not of a kind different from those specifically named. They partake of the same kind and character as injuries specifically enumerated and are likewise compensable unconditionally, unless expressly excluded by the terms of the statute.

The title of the act declares that it is: "An act to provide a system of workmen's compensation; . . . prescribing the method of payment of compensation to employees *injured* and disabled as a result of accidents arising out of and in the course of their employment." Section 3 provides: "The employer shall be liable irrespective of negligence, to furnish compensation under the provisions of this act for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all liability therefor whatsoever, whether to the employee or any other person." Section 7 (b) provides: "The

term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom." It is expressly provided that certain diseases shall not be included in said terms. Section 12 provides: "(a) This act shall apply to all cases within its provisions except those exclusively covered by any federal law. (b) This act shall apply to *all injuries* received in this State, regardless of where the contract of employment was made." Section 13 provides for medical, surgical, and hospital treatment "as may reasonably be required for the first sixty days after the *injury or disability* to cure and relieve from the effects of the *injury*. Section 15 provides for temporary total disability, and section 16 for temporary partial disability. Section 17 is intended to provide compensation for all "permanent partial disability" and "for various injuries," according to the headline of the section. There is no other provision for such disability or for "various injuries." It will be noted that at the close of the enumeration of the specific losses or injuries tabulated, that the next sentence opens with the words "for permanent injuries other than those above specified." It would appear that the paragraph following the specific losses is intended to cover and include any and every kind of a permanent physical injury other than the enumerated list, and also include permanent injuries causing a loss of earning power. It would be much more reasonable, and more in accord with the intent and purpose evidenced by the act, to supply the word *also* before the word *include,* than it would be to interpolate the word *only* after the word *include.* We do not hold that either is permissible or necessary.

Reading the entire act from the title to the concluding section, it is apparent that it was the intent and purpose to provide a method of compensation to those who may be *injured* in industry to take the place of the preceding and prevailing methods and remedies at the time of the adoption of the act. It cannot be said with any degree of reason or justice that it was the intent and purpose of the Legislature to provide a means of compensation for certain injuries, which an employee may sustain, and to wholly exclude any remedy for other injuries for which he had a remedy at the time of the adoption of the act. Such an act is highly remedial and calls for a liberal construction in favor of the employee. In fact, section 76 of the act itself provides that "all of the provisions of this act shall be liberally construed with a view to the public welfare and a substantial compliance therewith shall be sufficient to give effect to rules, regulations, requirements, awards, orders or decisions of the commission, and they shall not be declared imperative, illegal, or void for any omission of a technical nature in respect thereto." A view

to the public welfare requires that the burden of compensation for an injured employee shall fall upon the industry in which he was injured instead of upon the individual employee or the public at large. This is the economic feature of the system. Having regard, therefore, to the implied, as well as to the expressed purpose and intent of the act to provide compensation for *injured* employees, and to substitute this remedy for the previous remedy, and the fact that both parties have accepted the act, whereby it becomes a part of the contract of employment, we are impelled to the conclusion that the sentence "such other injuries shall include permanent injuries causing loss of earning power" does not preclude a claimant from recovery under the act for permanent injury, although it may not actually result in causing an immediate loss of earning power. The purpose of this sentence, interposed as it is, could be considered as one to prevent a double recovery on account of the same injury, that is, one compensation for the damage to the physical structure of the body, and another based upon the loss of earning power. However, the specific office or function which this sentence was designed to fill, we are not called upon to determine and do not presume to say. It is sufficient to say that it does not exclude plaintiff's claim under the facts and circumstances in this case. We are led to these conclusions upon consideration of the manifestly just intendment of the act, and of the canons of statutory construction which are well known and almost universally applied. Some of them are as follows:

Doubt, if any, respecting the right to compensation is resolved in favor of the employee. [Manchester Street Ry. Co. v. Barrett, 265 Fed. 557 (C. C. A.); Lizotte v. Nashua Mfg. Co., 78 N. H. 354, 100 Atl. 757.] The intent of the Legislature is to be gathered from the necessity or reason of the act and the meaning of words is to be derived from a consideration of the whole act, and doubts respecting rights to compensation resolved in favor of the employee. The statute should receive a broad and liberal construction. [2 Schneider Workmen's Compensation Law, pp. 1634, 1635; Harper, Workmen's Compensation (2 Ed.), p. 506; Gossen v. Borgholm, etc., 174 Minn. 227, 218 N. W. 882; Smith & McDonald v. State Industrial Commission, 271 Pac. 142 (Okla.).] The title is part of an act and useful in determining intent. [Williams v. St. Louis-San Francisco Ry. Co., 7 S. W. (2d) 392.] Different sections of a statute bearing on the same subject must be harmonized if possible. [State v. Freeland, 318 Mo. 560.] Apparently conflicting provisions must be reconciled if possible with the general legislative purpose. [Dysart v. City of St. Louis, 11 S. W. (2d) 1045.] Sections of a statute must be construed with other sections touching the same subject-matter. [State ex rel. Thompson v. Dirckx, 11 S. W. (2d) 38.] Courts may con-

sider expediency of law in ascertaining intent. [State ex rel. v. Regan, 298 S. W. 747, 317 Mo. 1216.] Intent of the Legislature must be ascertained and given effect as expressed in the statute. [Rogers Foundry Co. v. Squires, 221 Mo. App. 17.] Courts cannot interpolate in a statute where omission is not plainly indicated. [State ex rel. Cobb v. Thompson, 5 S. W. (2d) 57, (Sup. Ct.).] To get at the true meaning of the language in a statute the court must look at the whole purpose of the act, the law as it was before the enactment and the change in the law intended to be made. [Pembroke v. Houston, 180 Mo. 627, 636.] It is a useful and safe rule of construction to resolve any ambiguity or obscurity in a statute in favor of such reading as will best meet the demands of natural justice, so far as that can be done without violence to settled legal principles. [Plumb v. Kansas City, 101 Mo. 525, 533; 25 R. C. L., sec. 258.]

There is no complaint as to the sufficiency of evidence to support the finding, except that it fails to show a loss of earning power. We have concluded that this is unnecessary. However, it would be an entirely reasonable inference from the evidence in this case that the result of plaintiff's injury is to cause a loss of earning power. The mere fact that his employer retained him at his previous wage is not at all conclusive that his physical impairment has not resulted in a loss of earning power when tested by a sale in an open market. The plaintiff in this case had served his employer for practically a quarter of a century and there were ample reasons for his retention at the same wage, independent of the actual value of his then earning capacity. Claimant could not chew his food and as a consequence suffered stomach trouble.

Even though it be considered necessary to show a loss of earning power, we think that the inferences which may be drawn from the evidence would be sufficient to support the conclusion and the award of the commission, if actually placed upon that basis. The appellate court will consider only the evidence most favorable to the claimant and all inferences which may be drawn therefrom to support the conclusion of the commission. [Sec. 44, Workmen's Compensation Act, Laws 1927, p. 512; Cotter v. Valentine Coal Co., 14 S. W. (2d) 660.]

None of the authorities cited by appellant incline us to its view. Among the cases relied upon and discussed in the brief are the following: Travelers Ins. Co. v. Albin, 127 S. E. 804 (Ga.); Moses v. National Union Mining Co., 184 N. W. 746 (Ia.); Woodward v. Pittsburgh Eng. & Const. Co., 143 Atl. 21 (Pa.); Carolin v. Hoe & Co., 212 N. Y. S. 75; Driscoll's case, 137 N. E. 260 (Mass.); Capone's case, 132 N. E. 32 (Mass.); Consolidated Coal Co. v. Industrial

Commission, 145 N. E. 675 (Ill.); Leitz v. Labadie Ice Co., 201 N. W. 485 (Mich.).

It develops upon examination that these as well as other cases from foreign states lend little, if any, aid to the solution of the question in this case. There are no cases from our own State which are directly applicable, and the cases from other states are based upon statutes so dissimilar in the context of specific sections that the pronouncements of the courts upon them shed but little light upon a correct interpretation and application of the particular section of the Missouri statute with which we are dealing. No section of any statute, which has been called to our attention, is at all nearly similar in its scope, intendment, verbage or structure, to the section of our act under consideration.

More persuasive than others and more nearly applicable are the reasons assigned and conclusions reached in the New Jersey adjudications. [See DeZeng Standard Co. v. Sheridan Pressey, 86 N. J. L. 469, 92 Atl. 278; Burbage v. Lee et al., 96 Atl. 859; Hercules Powder Co. v. Morris County Court of Common Pleas, 107 Atl. 433.] It is notable that in these cases the word "disability" is given a broader meaning than the limited one ascribed to it in the decisions of other states. It is held that compensation for disability is allowable in cases of an injury which destroys or impairs a member, or a function of a part of the body, irrespective of the question of reduced earning capacity. The course of reasoning, evidenced by these opinions, is in keeping with the just, humane and beneficent, as well as the economic purposes intended by legislation of this character, and is worthy to be followed. In this connection, we perceive that our statute is even broader and more elastic than the New Jersey statute, and that it not only permits recovery for "disability," but provides compensation for various "injuries" independent of the question of disability, in the sense that it causes a loss of earning power.

We do not find any merit in the second assignment of appellant to the effect that the meager award of $50 for disfigurement is not justified on the ground that a handicap was suffered by the injured claimant in obtaining employment. The loss of thirty-one teeth is a serious handicap to any one. It is a severe mutilation and permanent disfigurement. To say otherwise is to speak contrary to nature. No one could be so devoted to the practical and artificial as to claim for "store teeth" equal advantage with the sound and natural incisors and molars. If there be such a one we apprehend that time holds for him certain and complete disillusionment.

The award made by the commission and the judgment of the circuit court should be affirmed. The commissioner so recommends. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion by Boyer, C., is adopted as the opinion of the court. The award made by the commission and the judgment of the circuit court is affirmed. All concur, except *Trimble, P. J.,* absent.