(No. 13263.—Judgment reversed.)

THE WEIS PAPER MILL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(PEARL KLOSING, Admx. Defendant in Error.)

*Opinion filed June 16, 1920.*

1. WORKMEN'S COMPENSATION—*when an accident occurs in the course of employment.* An accident happens in the course of the employment if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing.

2. SAME—*when an accident arises out of employment.* An accident arises out of the employment when it is something the risk of which might have been contemplated by a reasonable person when entering the employment as incidental to it.

3. SAME—*when a risk is incidental to the employment.* A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service, and it may be incidental to the employment when it is either an ordinary risk directly connected with the employment or an extraordinary risk which is only indirectly connected therewith.

4. SAME—*employer under Compensation act is not an insurer of his employee's safety.* The Compensation act does not intend that the employer who comes within its provisions shall be an insurer of the safety of his employees.

5. SAME—*what acts of refreshment are incidental to employment.* Acts of an employee for the purpose of refreshing himself, such as quenching his thirst, relieving his hunger or protecting himself from excessive cold, the performance of which while at work

are reasonably necessary to his health and comfort, are incidental to the employment.

6. SAME—*employee cannot voluntarily increase the risk of his employment.* For an accident to arise out of the employment the act of the employee must be reasonably incidental to his employment, and he must not unnecessarily increase the risk of injury to himself beyond that contemplated in his contract of service or choose an unnecessarily dangerous place for the doing of the act which is claimed to be incidental to the employment.

7. SAME—*when accident while the employee is resting does not arise out of employment.* Where employees are permitted to rest at intervals between the loading of wagons, an injury to an employee who was run over while resting on a switch track in the shade of a box-car on the premises of the employer does not arise out of the employment, where the track was known to be used by switch engines during the day and where the employee could have availed himself of other shade in which to rest.

WRIT OF ERROR to the Circuit Court of Adams county; the Hon. ALBERT AKERS, Judge, presiding.

FYFFE, RYNER & DALE, for plaintiff in error.

JOHN E. WALL, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Charles P. Klosing at the time of his injury, in June, 1918, was employed by plaintiff in error in loading wagons of straw near its mill. During a rest period, while lying in the shade of a box-car on a switch track on plaintiff in error's premises, the car was backed up and ran over his legs, crushing them, and he died the next day in the hospital. Compensation was awarded by the arbitrator and the Industrial Commission and the circuit court confirmed the decision of the commission. The cause has been brought to this court on writ of error.

The record shows no controversy as to the facts. The plaintiff in error operated a paper mill in Quincy, Adams county. A large straw stack was situated about half a block south of the mill. There was also a shed three or four hundred feet from the stack, and there were switch tracks on

the mill premises between the shed and the stack. The employees were accustomed to go to the shed for drinking water and kept some of their clothes there. Two wagons were employed in taking the straw to the mill from the stack. While one was going to the mill and being unloaded the other would be in process of loading at the stack. Klosing's work was to assist in loading wagons at the stack and other employees had charge of taking the wagons to the mill and unloading them. The evidence shows that the men loading at the stack would frequently have to wait until a space was cleared up-stairs in the mill for the unloading of the straw hauled there. The deceased and two other persons who were engaged in loading the wagon at the straw stack were resting during such an interval while a wagon was being unloaded at the mill at the time this accident occurred. It seems to have been a very warm day and no point is made that it was the duty of the deceased to be working at the time of his injury, but it is argued, rather, that the spot he chose for his rest was improper and dangerous; that it could not reasonably have been contemplated in the contract of employment that the deceased, while he had no duties to perform at the straw stack, would lie down on the switch track in the shade of a freight car, which might be moved at any time. It appears from the record that a switch engine came upon that track twice a day. It is also shown that there was shade at the stack where the deceased had been working, and he could have gone to the shed to rest if he had desired.

In order for an employee to recover for an injury such injury must have arisen out of and in the course of the employment. This court has said that to recover for an accident under the Workmen's Compensation act it must result from a risk reasonably incidental to the employment; that an accident arises in the course of the employment if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is em-

ployed and at a place where he may reasonably be during that time to do that thing; that an accident arises out of the employment when it is something the risk of which might have been contemplated by a reasonable person when entering the employment, as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. It may be incidental to the employment when it is either an ordinary risk directly connected with the employment or an extraordinary risk which is only indirectly connected therewith. (*Dietzen Co.* v. *Industrial Board,* 279 Ill. 11.) This court has said that it was not intended by this act that the employer who comes within its provisions shall be the insurer of the safety of the employee. "The employer is liable for compensation only for an injury which occurs to the employee while performing some act for the employer in the course of his employment or incidental to it." (*Fairbank Co.* v. *Industrial Com.* 285 Ill. 11.) "An accident, to be within the Workmen's Compensation act, must have had its origin in some risk of the employment." *Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459.

Conceding that it may be fairly inferred from the facts in this record that this accident arose in the course of the employment, it may well be questioned whether it arose out of the employment. It is not the rule that all accidents which happen during the leisure periods of the employee in attendance on personal comforts or necessities are held not to arise out of the employment, for if an accident happens at such a time there would be no break in the employment even though the employee is paid for the time he is actually at work, especially when the accident occurs on the employer's premises or about his property, unless the workman is doing something wholly foreign to his employment. Acts of ministration to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold,

the performance of which while at work are reasonably necessary to his health and comfort, are incidental to the employment.   1 Honnold on Workmen's Comp. sec. 111, and cases cited; *Whiting-Mead Commercial Co.* v. *Industrial Accident Com.* 178 Cal. 505; see, also, *Papinaw* v. *Grand Trunk Railway Co.* 12 Neg. & Comp. Cas. Ann. (Ill. ed.) 243, and cases cited in note.

Where a ship's engineer in an intensely cold place rigged up a temporary stove to warm his cabin, though he was told during the daytime by his superior officer that it was dangerous and warned not to use it at night, it was held that it was reasonably necessary to have his cabin heated at night, and the engineer having been asphyxiated at night it was held the accident arose out of the employment. *Edmunds* v. *Owners of Steamship Peterson*, 5 B. W. C. C. 157.

Where an employee, after having worked outside in wintry weather for several hours, came into a building and while awaiting an opportunity to use a freight elevator to carry up beef for his employer sat down in front of the fire-box of the boiler and fell asleep and a few minutes after was awakened by finding his greasy clothing on fire, it was held that upon these facts the arbitrator or commissioner properly found that the injury arose out of the employment. *Richards* v. *Indianapolis Abattoir Co.* 92 Conn. 274.

In a plant manufacturing iron briquettes the injured employee was engaged in dumping cars loaded with briquettes as they came out of the plant,—one car about every fifteen minutes,—and had intervals of rest between unloading them. A car loaded with warm briquettes came out of the plant and he blocked it and sat or lay down on the track to get warm from the heat of the briquettes, the night being very cold, and while lying there or while picking up the briquettes in a recumbent position after getting warm he was caught and injured by the next loaded car. It was held that he was entitled to recover. *Northwestern Iron Co.* v. *Industrial Com.* 160 Wis. 633.

. An employee working during the night shift ate his supper, for the sake of warmth, while seated on a tank in the pump room. His employers had provided a dining room for the workmen but they were not bound to take their meals there. In getting off the tank this employee fell through an aperture in the tank and was scalded, receiving injuries from which he died. It was held that the accident did not arise out of the employment. *Brice* v. *Lloyd,* 2 B. W. C. C. 26.

Where a sailor went on deck from his cabin in the course of his employment on a hot night for the purpose of getting fresh air and disappeared, his body being found the next day in the water close to the ship, it was held the accident was not shown to have arisen out of the employment. *Marshall* v. *Owners of Ship Wild Rose,* 2 B. W. C. C. 76.

A workman ordered by his foreman to proceed from one part of the works to another, stopped, saying that he was going to ease himself. He was later found dead in a hoist where it was held it was unreasonable for him to go and where he could not have gone by mistake. It was held that the accident did not arise out of the employment. *Rose* v. *Morrison & Mason,* 4 B. W. C. C. 277.

A city employee doing teaming for the city with his own horses and cart, during the noon hour of the day on which he had been hauling coal from a pile near a railroad sat down to eat his lunch on the railroad track when another car struck the car against which he was leaning, causing it to "kick." It was held he was not injured in the course of his employment and could not recover from the city under the Compensation act; that he incurred "a danger of his own choosing and one altogether outside of any reasonable exercise of his employment." *Haggard's case,* 125 N. E. (Mass.) 565.

To recover on the ground that an accident arose out of the employment, under the authorities it must be held that what the employee was doing was reasonably incident to the

289 — 19

employment. He must not unnecessarily increase the risk of injury to himself, and so the risk of liability of his master, beyond that contemplated in his contract of employment. He may not choose an unnecessarily dangerous place for the doing of such things, nor may he do them in an unnecessarily dangerous way. (25 Harvard Law Review, 411, and cases cited.) It would hardly be considered as a reasonable incident of the employment that an employee, in the interval of rest between the loading of two wagons, would lie down on the switch track, in the shade of a box-car, and run the risk of going to sleep, when the track was known to be used by switch engines during the day; and it does not materially affect this conclusion that at the time Klosing lay down on the tracks, and before he went to sleep, two of his fellow-employees were near him, though we conclude from the record that they had left before the car was backed. This case differs in its facts materially from that of *Northwestern Iron Co.* v. *Industrial Com. supra,* where the duties of the injured employee required him to be working continuously in and around the tracks and the cars by which he was injured. Here the employee's duties did not so require. He could have rested, if he desired, during the interval between the loading of the wagons, in the shade of the straw stack or in the shed where some of his clothes were, but he chose, for his own convenience, an unreasonably dangerous place, thus exposing himself to a wholly unnecessary risk. We cannot hold that there would be a reasonable implication in the contract of employment that this employee might rest in such a dangerous place during the interval between his periods of actual work in loading wagons.

The judgment of the circuit court will therefore be reversed.    *Judgment reversed.*