STEVE HOWES (CLAIMANT), RESPONDENT, v. STARK BROS. NURSERIES AND ORCHARDS COMPANY (EMPLOYER) AND AETNA LIFE INSURANCE COMPANY (INSURER), APPELLANTS.*—22 S. W. (2d) 839.

St. Louis Court of Appeals.  Opinion filed January 7, 1930.

*Corpus Juris-Cyc References: Workmen's Compensation Acts,—CJ, section 34, p. 40, n. 95; section 63, p. 73, n. 76; section 132, p. 125, n. 72.

*C. E. Klein* for appellant.

794

*F. D. Wilkins* for respondent.

SUTTON, C.—This is an action for personal injuries brought under the Workmen's Compensation Act. Plaintiff's injury occurred on November 12, 1927. He was at that time, and had been for several years prior thereto, in the employ of Stark Brothers Nurseries and Orchards Company, working as a teamster at their nurseries, consisting of a tract of several hundred acres, located two miles west of the city of Louisiana, in Pike County. At the time of his injury, which occurred shortly after 5:30 o'clock in the evening, he was on state highway No. 54, which runs through the nurseries' premises. He had taken his team from the field, where he had been working during the day, to the barn which was located on the north side of the highway, and had ridden with several fellow employees in a wagon belonging to the superintendent of the nurseries company east along the south side of the highway, a distance of two to three hundred yards to a point opposite a driveway leading north from the highway to the office of the company, which was located about sixty yards from the highway. There was a bus standing in the driveway just off the highway, belonging to the nurseries company, which was furnished by the company for the purpose of transporting its employees to and from its premises. The bus was standing at the place where it was customarily boarded by employees to be transported to Louisiana where they resided. When the wagon in which plaintiff was riding from the barn reached a point about opposite the driveway in which the bus was standing, it stopped and plaintiff got out and started across the highway to board the bus, passing behind the wagon in so doing. As he was thus crossing the highway, he was struck by a westbound automobile, and thereby received the injuries for which he sues. The automobile belonged to and was

driven by a stranger, who was not connected in any way with the nurseries company. The bus, though it sometimes stopped to receive employees for transportation on the south side of the highway opposite the driveway, usually stopped for that purpose in the driveway where it was standing at the time plaintiff was injured. The nurseries company had been furnishing this bus for the transportation of its employees to and from its premises during all the time plaintiff was in the employ of the company. It stopped regularly at certain designated places in Louisiana to receive and discharge employees being transported to and from the nurseries premises. No charge was made for the transportation. Nothing was said about transportation at the time plaintiff was employed, but he knew that free transportation was furnished. Plaintiff's usual hours of work at the nurseries were from seven o'clock in the morning until 5:30 in the evening, starting at seven o'clock in the morning and quitting at 5:30 o'clock in the afternoon, at the barn. So, on the day of his injury, plaintiff quit work at 5:30 o'clock, and was on his way to take the bus when he was injured. The employees of the nurseries company usually rode on the wagon on the highway in going from the barn to the bus, and the foreman of the company knew this.

The Compensation Commission awarded plaintiff compensation in amounts aggregating $2773.93, and made the following statement of facts and rulings of law:

"The employer regularly furnished a bus to transport its employees to and from a city and its plant, about two miles distant, before and after working hours. While crossing a public highway to take the bus home from work the employee was struck and injured by a passing automobile.

"Where an employer furnishes a bus to transport its employees to and from their work between a city and its plant, two miles distant, such transportation is incident to the employment, and an accident to an employee in connection with such transportation arises out of and in the course of the employment.

"An accident to an employee while crossing a public highway to ride home from work in such bus is so connected with such transportation that it arises out of and in the course of the employment."

From this award the defendants appealed to the circuit court. Upon the hearing of the cause in the circuit court, judgment was given for plaintiff for $2870.90, from which judgment defendants have appealed to this court.

Section 3 of the Workmen's Compensation Act (Missouri Session Laws 1927) provides that "the employer shall be liable irrespective of negligence, to furnish compensation under the provisions of this act for personal injury or death of the employee by accident arising out of and in the course of his employment." De-

fendants insist here that plaintiff's injury did not arise out of and in the course of his employment within the meaning of that section, and that therefore the judgment of the court below should be reversed.

In Flanagan v. Webster (Conn.), 142 Atl. 201, which is peculiarly instructive here, the court said:

"The plaintiff lived in the village of West Cheshire. The only way in which he could reach his work was through transportation furnished by the defendant employer in one of its trucks which stopped for him in the morning usually at a point on the state road and carried him to his place of work. It ordinarily came along in time to get the men to their work at 6:30 A. M. On the stated morning the plaintiff left his home and walked to the state road where the truck usually picked him up. It was late on this morning; the weather was cold and because of this the plaintiff walked along the road in order to keep warm, and upon its left side. The truck came up with him, and stopped on the right-hand side of the road for him to board it. While plaintiff was crossing the highway to board the standing truck, he was struck by an automobile and sustained a fracture of the femur. . . . If plaintiff's injury occured in the course of his employment, manifestly it must have arisen out of the employment. The sole question for our determination is, Did plaintiff's injury arise in the course of his employment? 'In the course of points to the place and circumstances under which the accident takes place and the time when it occurred.' An injury is 'said to arise in the course of one's employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in doing something incidental to it.' [Larke v. Hancock Mut. Life Ins. Co., 90 Conn. 303, 308, 97 A. 320, L. R. A. 1916E, 584; Whitney v. Hazard Lead Works, 105 Conn. 512, 517, 136 A. 105.] As a general rule employees will not be regarded as in the course of their employment while going to or returning from the place of their employment. We note in Lake v. Bridgeport, 102 Conn., 337, 128 A. 782, that the rule is subject to many exceptions. Four of these we specify in Whitney v. Hazard Lead Works, supra, and all of the four exceptions find illustration in our decided cases. Two of these exceptions are: 'Where the employer contracts to and does furnish transportation to and from work,' and 'where the employee is using the highway in doing something incidental to his employment, with the knowledge and approval of the employer.' . . .

"The defendant employer furnished the plaintiff transportation to and from his place of work. The work began when the employee reached the place of work. The employment certainly included the

period of transportation, for that was by the terms of the employment made incidental to it by the express agreement of the employer. And we have held that the relation of master and servant exists during the period of transportation, whether the transportation be under the express agreement of the employer, or by his implied consent inferred from his knowledge of the practice of transporting the employee and his expectation that this practice would continue. Swanson v. Latham, 92 Conn., 87, 101 A. 492, and Sala v. American Sumatra Tobacco Co., 93 Conn. 82, 105 A. 346, were cases involving injuries to an employee while riding, pursuant to his contract of employment, to and from his work, in a conveyance furnished by his employer. Saba v. Pioneer Contracting Co., 103 Conn. 559, 131 A. 394, was a case involving injury to an employee while riding to and from his work with the knowledge of the employer of the practice, and his continued acquiescence in it, resulting in affixing to the contract of employment as an incident the obligation of transporting the employee. [In re Donovan, 217 Mass. 76, 104 N. E. 431, Ann. Cas. 1915C, 778; article by Professor Bohlan, 25 Harv. Law R. 401 *et seq.*] Under the common law, as we have applied it, the relation existing between the employee and the employer under a like transportation was that, of master and servant. [Pigeon v. Lane, 80 Conn. 237, 67 A. 886, 11 Ann. Cas. 371.] . . . Thus the employer might designate the place where the automobile was to be boarded; it might be on private property or on a public highway. If the employee went to the designated place within a reasonable time prior to the time when he was to board the automobile, he would, from the time he reached the designated place, be then carrying out the direction of his employer, and that direction would become an incident of the employment and a part of the means of transportation, just as a railway station, or a bus waiting room, is a necessary incident of the transportation of the passengers of the railway or bus line. Similarly, when an employee is directed to report each morning at a given place, or to a certain person, to receive instruction as to where he is required to work that day, the relation of master and servant has been held to commence at the time he reported, and his employment to have begun at that time, and that the injury thereafter occurring, prior to the time of actually beginning work, was suffered in the course of his employment. [Milwaukee v. Althoff, 156 Wis. 68, 145 N. W. 238, L. R. A. 1916A, 327; Milwaukee v. Industrial Com., 185 Wis. 311, 201 N. W. 240.] So it has been held that the fact that the injury occurs while the employee was in the act of boarding the train and not while being transported does not relieve the employer of liability for compensation. [Fisher v. Tidewater Building Co., 96 N. J. Law, 103, 114 A. 150.] Nor does it relieve the employer where

the employee is injured when upon his employer's premises and engaged in the preparation necessary for beginning the work of his employment. [Terlecki v. Strauss, 85 N. J. Law, 454, 89 A. 1023.] Other illustrations of the underlying principle of these cases are found in the class of cases represented by Procaccino v. Horton & Sons, 95 Conn. 408, 111 A. 594; Merlino v. Conn. Quarries Co., 93 Conn. 57, 104 A. 396; Corvi v. Stiles & Reynolds B. Co., 103 Conn. 449, 130 A. 674; Cudahy Packing Co. v. Parramore, 263 U. S. 418, 423, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532; and Bountiful Brick Co. v. Giles, 48 S. Ct. 221, 72 L. Ed. 507, decided February 20, 1928. 'It is clear,' said Collins, M. R., 'that you cannot look at the moment when he begins his work as the moment when he gets into the employment.' [Sharp v. Johnson & Co., Limited (1905), 92 L. T. 675, 7 W. C. C. 28, 30.]

"If the plaintiff had, when he walked from his home to the state road where his employer's truck usually picked him up, remained at this point, and was there injured while waiting for the truck, there could be no doubt that during the period plaintiff was waiting at this point he was in the course of his employment. His being at this point, upon this finding, would have been an incident of his employment, and a fulfillment of the implied direction of his employer. Under the authorities we have cited the employee would be held to have been in the course of his employment. But he did not remain in the place where the truck usually picked him up. The truck was late, and in order to keep warm, he walked along the road, keeping upon the left-hand side of the road, which would enable him to see and avoid automobiles approaching toward himself. The finding is silent as to how far he had to walk before the truck overtook him. Whether he could have recovered compensation from his employer for an injury suffered by him while he was walking upon the highway we are not called upon to determine. The truck came up with the plaintiff as he was walking and stopped on the right-hand side of the road for the purpose of having him get on the truck. This was an invitation for the plaintiff to board the truck at this time and place, given by the driver of the truck who was acting in behalf of his own and the plaintiff's employer. It was therefore as effective as if the employer himself had then ordered the plaintiff to board the truck. The question of the right of the employee to be at this place in the highway in the course of his employment need not be answered, since the employer had waived that right and accepted that particular place in the highway as a proper place for the plaintiff to board the truck. While the plaintiff was crossing the highway in carrying out his employer's invitation or order for the purpose of boarding the truck he was struck by an automobile and injured. From the moment at least when the

truck stopped and plaintiff began his attempt to cross the highway to board it, if not before, his employment began. He was then and thereafter until struck where he might reasonably have been engaged in attempting to reach the truck so that he might board it, and reasonably fulfilling the order of his employer and doing something which was incidental to his employment. [Larke v. Hancock Mutual Life Ins. Co., supra, and Whitney v. Hazard Lead Works, supra.]''

In Wilson Berger Coal Co. v. Brown (Ky), 3 S. W. (2d) 199, it appeared that Brown was employed at the mines of the coal company, which, for the convenience of itself and its employees, maintained roads through its property. While walking home from his work Brown stumbled on a stone in one of these roads, and was thereby injured. The court held that Brown was entitled to compensation, and, in so holding, said:

''There can be no doubt that an employee, while going to, or returning from, his place of work along a road leading over his employer's premises, and built and intended for his use, is still in the course of his employment, and if he is injured while so traveling, the accident is one arising out of and in the course of his employment.''

In Bountiful Brick Co. v. Giles, 276 U. S. 154, 48 S. Ct. 221, Nephi Giles, an employee of the brick company, while crossing the tracks of a railway company on his way to work, was struck by a train and killed, at a place habitually crossed by employees of the brick company, a practice which was well known to the company, and carried on without objection on its part. In the discussion and disposition of that case the court said:

''The question for determination is whether the Utah Workmen's Compensation Act (Comp. Laws Utah 1917, sec. 3113, and subsequent amendments), which provides compensation for personal injury or death of an employee by accident 'arising out of and in the course of his employment,' as it was construed and applied to the facts by the court below, contravenes the due process of law clause of the Fourteenth Amendment. . . . And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employ-

ment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment ·may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer. . . . Since the only way of access to its brickyard from the east was across the railway tracks, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof. If it were necessary to strengthen the implication of consent on the part of the company to the crossing by any way its employees chose to take, it would be enough to refer to the testimony of the manager, who, knowing of the practice, did not forbid it, but in effect approved it by warning Giles simply to be careful.''

In Scalia v. American Sumatra Tobacco Co. (Conn.), 105 Atl. 346, where two employees of the tobacco company, Catherine Scalia and Josephine Sala, were killed when an automobile in which they were riding on a public highway, which automobile was furnished by the company for their transportation in accordance with the terms of the contract of employment, skidded and collided with a tree, the court said:

''The rule has been established : 'That the employer's liability in such cases depends upon whether the conveyance has been provided by him, after the real beginning of the employment, in compliance with one of the implied or express terms of the contract of employment, for the mere use of the employees, and is one with which the employees are required, or as a matter of right permitted, to use by virtue of that contract.' [Donovan's Case, 217 Mass. 78, 104 N. E. 431, Ann. Cas. 1915C, 778.] . . . Although the decedents, at the time of the accident, had not actually commenced their work upon the tobacco plantation of the defendant company, it is plain that their transportation was a part of the contract of employment with this defendant. When they were injured they were not passengers, paying a stipulated fare for the conveyance to their work. The automobile which skidded and caused the accident in question was furnished and paid for by the defendant company. The relation that then existed between the women and the Sumatra Tobacco Company was that of master and servant, and not that of carrier

and passenger. At the time they were injured they were laborers in the employ of the tobacco company. . . . This being so, the case is like Swanson v. Latham et al., 92 Conn. 87, 101 At. 492, in which we stated that: 'An injury received by an employee while riding, pursuant to his contract of employment, to or from his work in a conveyance furnished by his employer, is one which arises in the course of and out of the employment.' ''

In Kowalek v. New York Consolidated R. Co., 179 N. Y. S. 637, where an employee of a railroad company, while waiting to take a train home from his work, was killed by a current of electricity received from a third rail, the court said:

''The deceased was entitled to journey from his work free of charge upon the cars of the appellant, and while so traveling would have been in the course of his employment. [Russell v. H. R. R. R. Co., 17 N. Y. 134; Ross v. N. Y. C. & H. R. R. Co., 5 Hun. 488; Vick v. N. Y. C. & H. R. R. Co., 95 N. Y. 267, 47 Am. Rep. 36; McLaughlin v. Interurban R. R. Co., 101 App. Div. 134, 91 N. Y. Supp. 883.] The deceased was also entitled to a reasonable opportunity, after his work was done, to remove himself from the premises of his employer. [Pope v. Merritt & Chapman Derrick & Wrecking Co., 177 App. Div. 69, 163 N. Y. Supp. 655; Bylow v. St. Regis Paper Co., 179 App. Div. 555, 166 N. Y. Supp. 874.] The ten minutes, which elapsed between the moment when he gave in his time and the moment of the accident, was a reasonable time during which to stay upon the premises of his employer, waiting to take the next train home. Therefore, whether the accident happened while the plaintiff was thus waiting, or after his homeward journey had begun, he was in either case, under the authorities cited, unless guilty of some affirmative act removing him therefrom, still in the course of his employment when death overtook him.

''The case made was one of a continuing employment, so that the burden of proving a cessation thereof fell upon the appellant. That burden was not successfully borne. Upon the question whether the accident arose out of the employment it is sufficient to cite authority for the proposition that accidents occurring to employees while traveling to and from their work in an automobile provided by their employer arise not only in the course of the employment, but from hazards incident thereto. [Matter of Littler v. Fuller Co., 223 N. Y. 369, 119 N. E. 554.] ''

In Stacy's Case, 225 Mass. 174, where an employee of an ice company employed in the work of storing in an ice house ice taken from the pond of his employer, was returning at the end of his day's work to his home on the other side of his employer's pond, and crossed the pond on the ice, this being the reasonable and customary way, although not the only way, to reach his home, and being the way

regularly used by him and his fellow employees who lived in the same direction, and while thus crossing the pond, the employee broke through the ice and was drowned, the court said:

"While the employee's work for the day had been finished and he was on his way home at the time of the fatal accident, still it is settled, that an injury to a workman may arise out of and in the course of his employment even if he is not actually working at the time of the injury. . . . In view of the special findings of the committee above recited, we are of opinion that the conclusion reached by the committee and affirmed by the board, that the death of the employee arose out of and in the course of his employment, was justified."

In Wabash Railway Co. v. Industrial Commission (Ill.), 128 N. E. 290, where a railroad roundhouse mechanic (Charles Miller) was killed by a switch engine after he had finished his day's work, and while he was walking along the track on the railroad's premises to a point where, according to known custom, he intended to catch a train on which he and other employees were allowed to ride home, the court said:

"As in this proceeding the accident happened before the employee reached the train of the defendant in error railway company, the question whether he was permitted to ride free has no controlling force on the question whether the accident arose out of and in the course of the employment. In view of all the circumstances in the case, by the great weight of authority as well as by sound reasoning, we think the conclusion follows that this accident arose out of and in the course of Miller's employment."

In Cudahy Packing Co. v. Parramore, 263 U. S. 418, which was a case arising under the Utah Workmen's Compensation Act, where an employee (Joseph Parramore) going to his work at his employer's factory by the customary and only practicable way was killed by a locomotive, while he was crossing, on a public road, a railroad adjacent to the factory, a few minutes before the time when his day's service at the factory was to begin, the court held that the death of the employee sustained a causal relation to his employment, and that the imposition of liability on the employer by said compensation act was therefore constitutional, and in so holding, said:

"The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured. And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say that it is enough if there be a causal connection between the injury and the business in which

he employs the latter—a connection substantially contributory though it need not be the sole or proximate cause."

The doctrine announced in these cases is grounded in sound reasoning, and is supported by the great weight of authority. Nor is the doctrine thus announced out of accord with Smith v. Levis-Zu-koski Mercantile Co., 14 S. W. (2d) 470, much relied on by defendants here, wherein this court, speaking through Commissioner BENNICK, said:

"The concensus of authority is to the effect that an injury to an employee arises 'in the course of' his employment, when it occurs within the period of his employment, at a place where he might reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in the performance of some task incidental thereto. Necessarily, the converse of the rule must also apply, so that where, at the time his injury is received, the employee is engaged in a voluntary act, not known to, or accepted by, his employer, and outside of the duties for which he is employed, the injury cannot be said to have been received in the course of his employment.

. . .

"Likewise it is commonly held that an injury may be said to arise 'out of' the employment, when it is reasonably apparent, upon a consideration of all the facts and circumstances, that a causal connection exists between the conditions under which the employee's work is required to be done, and the resulting injury. In other words, an injury arises out of the employment if it is a natural and reasonable incident thereof, even though not forseen or anticipated; but, in all events, it must be the rational consequence of some hazard connected therewith."

It is true that the application of the doctrine thus announced to the facts of that case resulted in the holding that the employee was not entitled to compensation. But the facts of that case are very different from the facts of the present case.

Manifestly the plaintiff in the present case, while on the highway going from the barn to take the bus home after his day's work was done, had not removed himself from the course of his employment. While it is true the evidence shows he could have reached the bus without traveling on or across the highway, from which we understand it was not absolutely necessary for him to go to the bus in this way, yet he pursued the course which his employer had for a long time acquiesced in and thus impliedly directed him to pursue. We think, too, that the hazard of thus regularly and continuously using the highway in going from his work to the bus, was a hazard to which he was exposed in a peculiar way by reason of his employment—something beyond the normal hazard common to the general public—so that, in any view of the case, there was a causal re-

lation existing between the injury and the employment. We conclude, therefore, that the plaintiff's injury arose out of and in the course of his employment.

To sustain their view, defendants invoke the provisions of subdivision (c) of section 7 of the Compensation Act, as follows:

"Without otherwise affecting either the meaning of interpretation of the abridged clause, 'personal injuries arising out of and in the course of such employment,' it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such services."

The meaning of this language is not clear. In our view it serves little or no purpose but to introduce confusion where there was clearness before. It was probably inserted out of abundant caution to exclude injuries not fairly within the scope of the so-called abridged clause lest it be too broadly construed.

It is the manifest purpose of the Compensation Act to compensate all accidental injuries to workmen arising out of and in the course of their employment. Under the act the employee gives up a very substantial consideration for the limited compensation assured in the act. This is strikingly illustrated in the present case, where plaintiff's injury resulted in the loss of his right leg, and the disfigurement of his face by an ugly scar, besides other minor injuries, not to mention the great pain and anguish he must have suffered. He was awarded a compensation of $2773.93, $500 of which amount was for medical aid. Against this award a lien was charged for attorney's fees in the sum of $300. Thus the plaintiff gets compensation for the loss of his leg, and for his disfigurement, and his suffering, the net sum of slightly less than $2000. If his injuries had resulted from the grossest negligence of the defendant, his compensation would be no more. In view of such substantial consideration yielded by the employee, the act provides that the employer shall, without regard to negligence, compensate the employee in a limited amount for any injury received by him arising out of and in the course of his employment. The act should be liberally construed in furtherance of that end. The act itself provides that it shall be so construed. To give to it the narrow construction insisted upon by the defendants would defeat in a large measure its manifest purpose.

Defendants further insist that the circuit court acted without or in excess of its powers in giving judgment for an amount larger than the amount awarded by the commission. They say the circuit court under the provisions of the Compensation Act has no authority on appeal to increase the award of the commission, but can only modify, reverse, remand for a rehearing, or set aside the award. In

State ex rel. Brewen-Clark Syrup Co. v. Missouri Workmen's Compensation Commission, 8 S. W. (2d) 897, our Supreme Court ruled that, while the Compensation Act does not expressly provide that the circuit court in a case in which it does not reverse, remand for a rehearing, or set aside the award, shall render judgment in accordance with the award, such is the necessary implication arising from its language. The judgment of the circuit court in the present case, which is for the amount of the award with interest added, is in accordance with the award.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The following opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.