·HENDERSON

v.

NATIONAL BEARING DIVISION OF AMERICAN BRAKE SHOE CO.

No. 28785.

St. Louis Court of Appeals.

Missouri.

April 20, 1954.

Rehearing Denied May 17, 1954.

G. W. Marsalek, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for appellant.

Samuel J. Goldenhersh, John D. Gallagher, Goldenhersh & Goldenhersh, St. Louis, for respondent.

WOLFE, Commissioner.

This action was originally brought by Judge Hibbler before the Division of Workmen's Compensation. He sought compensation for disability arising out of an occupational disease contracted while he was in the employ of the National Bearing Division of American Brake Shoe Company. Before the claim was heard Hibbler died, from a cause not connected with the disease, and his minor son, by guardian, was substituted as the claimant. From an award of

$6,100.01 to the claimant the employer appealed to the circuit court where the award was affirmed. From the judgment of the circuit court affirming the award the employer prosecutes this appeal.

The facts of the case are that Judge Hibbler worked as a janitor for the American Brake Shoe Company. In the course of his employment with it, and because of it, he became ill from lead poisoning on March 19, 1951. A report of this was duly made and Hibbler's claim was filed before the Workmen's Compensation Division on September 22, 1951. On May 18, 1952, Hibbler died of a cause not connected with lead poisoning. At the hearing before the referee there was evidence that Hibbler had been living with a woman whom he held out to be his wife. Shortly after he died she had secured refusal of letters of administration from the probate court, as Hibbler's widow. She testified before the referee that she had never been married to Hibbler. She knew Judge Henderson, sometimes known as Jewell Hibbler, the present claimant in this case, as Hibbler's son from the time the boy was about five years of age until the time of the hearing when he was sixteen.

Louise Henderson testified that she was the mother of the boy and that Judge Hibbler was his father. She had never been married to Judge Hibbler but Hibbler recognized the child as his son and the boy was known as Judge Henderson and as Jewell Hibbler. His birth certificate offered in evidence gave his name as Judge Henderson. She testified that Hibbler gave monthly sums for the boy's support and bought clothing for him. The boy himself testified that Judge Hibbler frequently took him to places of entertainment, bought him clothing, and introduced him as his son. He said that people called him "Little Judge".

The finding of the commission is as follows:

"We find from all the evidence that the employee, Judge Hibbler, now deceased, contracted an occupational disease, the onset of which was March 19, 1951, arising out of and in the course of his employment with National Bearing Division of American Brake Shoe Company, resulting in 65% permanent partial disability of his body as a whole (65% of 400 weeks).

"We further find that said employee on May 18, 1952, died from causes unrelated to the above-mentioned injury, and left surviving him at the time of his death his minor son, Judge Henderson (also known as Jewell Hibbler) as his sole surviving dependent, who is substituted as claimant in the name of Louise Henderson, his guardian.

"We further find, in accordance with the stipulation between the parties to this cause, that employee, prior to his death on May 18, 1952, became and was 65% permanently and partially disabled (body as a whole) as the result of his occupational disease, lead poisoning.

"We further find that employer's liability for said disability had, therefore, accrued and become payable at the time of employee's death; that the amount of compensation payable employee for such disability is set out by statute (Sec. 287.190, R.S.Mo.1949 [V.A.M.S.]); that, having agreed to the exact nature and extent of disability, the cause of the disability and the average weekly wage of the employee, there was no dispute between the parties as to the compensation payable under the Missouri Workmen's Compensation Law, and, therefore, no dispute as to liability for compensation to be determined upon hearing and by award as provided by Sections 287.450, 287.460, 287.480, R.S. Mo.1949 [V.A.M.S.]. Employer's liability, therefore, had accrued and became payable at the time of this employee's death.

"We further find that Judge Henderson, also known as Jewell Hibbler, was a surviving dependent of employee and

is, therefore entitled to the unpaid accrued balance and unpaid unaccrued balance of compensation for such disability. (Section 287.230, R.S.Mo.1949 [V.A.M.S.]).

"Affirming on review award dated August 15, 1952."

This finding followed an award of compensation payable for 260 weeks at $25 a week, totaling $6,500, less a credit of $399.99, which had been paid by the employer to Judge Hibbler, leaving a balance of $6,100.01.

It is asserted that the issue of dependency was ignored by the commission but this does not appear to be supported by the record as there was a finding that the employee left surviving him "at the time of his death his minor son, Judge Henderson (also known as Jewell Hibbler) as his sole surviving dependent". The fact that the claimant is an illegitimate child does not bar him from claiming dependency, Section 287.240 RSMo 1949, V.A.M.S., and there was ample proof to support the finding that he was the sole dependent of Hibbler.

The point most seriously urged is that the commission could not properly award to the dependent any amount in excess of that which could have been collected by the employee prior to his death. In other words, the employer contends that the death of Hibbler terminated all liability for payments beyond the time of his death and that the only sum which the dependent can collect is $25 a week from the date of the onset of the disability up to the time of death. A determination of this point rests upon the construction of Section 287.230 RSMo 1949, V.A.M.S., which is as follows:

"1. The death of the injured employee shall not affect the liability of the employer to furnish compensation as in this chapter provided, so far as such liability has accrued and become payable at the time of the death, and any accrued and unpaid compensation due the employee shall be paid to his dependents without administration, or if there be no dependents, to his personal representative or other persons entitled thereto, but such death shall be deemed to be the termination of the disability.

"2. Where an employee is entitled to compensation under this chapter for an injury received and death ensues for any cause not resulting from the injury for which he was entitled to compensation, payments of the unpaid unaccrued balance for such injury shall cease and all liability therefor shall terminate unless there be surviving dependents at the time of such death."

We construed the foregoing section in Nations v. Barr; Mo.App., 43 S.W.2d 858, loc. cit. 861, wherein we said:

"The first clause of the section evidently relates only to cases where death has resulted from the injury, and, in such cases, only accrued compensation is payable, and it is provided that death shall be the end of the disability. Under such circumstances, the beneficiaries cannot collect both for the death and the disability, but are entitled to receive compensation only for the death, plus whatever compensation for disability that has accrued and become payable upon the death of the employee.

"The second clause of the section refers only to cases where, as here, death results from causes other than the injury received. This clause provides that payments for the unaccrued balance for such injury shall cease, and all liability therefor shall terminate, upon the death of the employee, unless there be surviving dependents at the time of such death. Clearly, under this clause, the right of the employee to compensation for disability, accrued and unaccrued, survives to his dependents. There is no provision or suggestion in the statute that the right to compensation must be evidenced by a claim filed, or an award made, prior to the death of the employee, to entitle the dependents to the compensation. It is the right to

the compensation, not the evidence of it, that survives to the dependents."

Without further discussion of the statute we affirmed an award of compensation which gave to the dependent disability benefits beyond the date of ·the employee's death.

If Nations v. Barr properly construes the statute then the award of the commission must be affirmed. In fact appellant concedes that the case is contrary to the construction for which it contends but urges us to reconsider and review the meaning of the statute.

It is stated that paragraph one of the quoted section applies regardless of what causes the death of the employee, and that paragraph two allows the dependent to claim that which would have been due the employee prior to his death where the death occurs from noncompensable causes. In support of this contention we are cited to cases from other jurisdictions. These construe statutes that differ considerably from ours and of consequence they afford us very little assistance. It is maintained, however, that, contrary to the purpose of the statute, an allowance of compensation beyond the date of death would be in the nature of damages rather than compensation for loss of wages, as wages obviously stop at death. The basis upon which the appellant presses its point is that the historical and philosophical purpose of the act is to compensate for the loss of earning power and the disability to work. It has been held that this is the general theory of it. Hickey v. Board of Education, Mo.Sup., 256 S.W.2d 775; Dauster v. Star Mfg. Co., Mo.App., 145 S.W.2d 499.

However, the loss of earning power and the disability to work cannot be restricted to mean loss of wages. Awards for permanent partial disability have frequently been upheld where there was no loss of wages and the loss of wages is not an essential element of the claim. Worley v. Swift & Co., Mo.App., 231 S.W.2d 828; Carr v. John W. Rowan Plastering Co., 227 Mo.App. 562, 55 S.W.2d 727. The award in such cases is

not for wages but for the loss of earning power. Betz v. Columbia Telephone Co., 224 Mo.App. 1004, 24 S.W.2d 224. Thus it will be seen that the act does not rest the awards upon the sole ground that wages have been lost.

Our attention has been directed to that portion of Section 287.530 RSMo 1949, V. A.M.S., which is as follows:

"it is the.intention of this chapter that the compensation payments are in lieu of wages and are to be received by.the injured employee or his dependents in the same manner in which wages are ordinarily paid. Therefore, commutation is a departure from the normal method of payment and is to be allowed only when it clearly appears that some unusual circumstances warrant such a departure."

This relates to the manner of payment of the award and not to the nature of it. It does not mean that the award is in lieu of wages but directs a manner in which payments are to be made. The section deals solely with the power of the commission to commute the amount of the award and to direct its payment in a lump sum in certain cases. Therefore, the construction placed upon Section 287.230 in Nations v. Barr does not conflict with the foregoing section in any way.

It is also asserted that the words of Section 287.230, "payments of the unpaid unaccrued balance for such injury shall cease and all liability therefor shall terminate unless there be surviving dependents at the time of such death", cannot refer to any sums that might have been due the employee beyond the date of death, because of the word "unaccrued". The appellant relies upon the first definition of "accrue" in Merriam-Webster Dictionary, Second Edition, which is, "To come into existence as an enforceable claim." It is maintained that by inserting this definition into the first paragraph of the section dealing with accrued and unpaid claims the first paragraph treats only of awards that have been made and are payable. It is said that the converse

of this is presented by the word "unaccrued" in the second paragraph and that it therefore deals only with payments that had not been awarded and paid up to the time of death. "Accrue" also means to be added by the passage of time, but regardless of this, if we accept the definition offered as applicable, the second paragraph could only mean the unawarded and unpaid amounts due to the employee by virtue of his injury.

▉ What survives to the dependent when the employee dies is the right to compensation as stated in Nations v. Barr. As we have said, the purpose of the act is to compensate for the loss of earning power. Hibbler suffered such a loss and had a right to recover. This right would have died with him if he had no dependents, but the statute reserved, to his dependent son, that which Hibbler could have recovered had he lived.

▉ This is the construction we placed upon the section over twenty years ago and it has gone unquestioned up to the present time. If the words of the section raise doubt as to its meaning, the doubt has been resolved in favor of the person seeking the benefits of the act and this is in accord with Section 287.800. Dixon v. Postlewait Glass Co., Mo.App., 238 S.W.2d 93; Reed v. Kansas City Wholesale Grocery Co., 236 Mo.App. 402, 156 S.W.2d 747, loc. cit. 753; Howes v. Stark Bros. Nurseries & Orchards Co., 223 Mo.App. 793, 22 S.W.2d 839.

For the reasons stated, it is the recommendation of the Commissioner that the judgment of the circuit court affirming the award of the commission be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., BENNICK, J., and BROADDUS, Special Judge, concur. ▉