Irene Johnson CULBERSON, also known as Bessie Brown, and Flora Hampton, by Clara Hampton, Appellants,

v.

DANIEL HAMM DRAYAGE COMPANY and American Mutual Liability Insurance Company, Respondents.

No. 44703.

Supreme Court of Missouri.

Division No. 2.

Jan. 9, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 13, 1956.

James Bell Higgins, Robert E. Keaney, St. Louis, for appellant Irene Johnson Culberson.

Milton R. Fox, William R. Kirby, St. Louis, for appellant Flora Hampton.

Albert I. Graff, Courtney S. Goodman, Malcolm I. Frank, St. Louis, for respondents.

STOCKARD, Commissioner.

The Industrial Commission of Missouri made a final award, with one member dissenting, affirming the award of the Referee of the Division of Workmen's Compensation, in the amount of $11,320, and funeral expenses, in favor of appellant Irene Johnson Culberson, also known as Bessie Brown (hereinafter referred to as appellant Brown) as the sole total dependent, for the death of her husband Arthur Culberson, also known as Joseph Willie Brown (hereinafter referred to as Joe Brown).

Flora Hampton, a minor, (hereinafter referred to as appellant Hampton) also filed a claim with the Workmen's Compensation Commission contending to be the minor child and a total dependent of the deceased. The Industrial Commission denied her claim, but gave no reason for doing so.

The employer and appellant Hampton appealed and the Circuit Court of the City of St. Louis set aside the final award of the Commission on the ground that the accident resulting in the death of Joe Brown did not arise out of and in the course of his employment. This made unnecessary the consideration of the merits of the appeal of appellant Hampton.

Joe Brown was employed by Daniel Hamm Drayage Company as a "helper" and he regularly engaged in loading sacks of flour from freight cars to trailers. On May 1, 1952, he and Charles Young, Jr., loaded a trailer and then rode with the driver, Fred Odenthal, when he took the loaded trailer to the Walter Freund Baking Company. The tractor-trailer was parked on the public street near the bakery and the three men walked to a nearby restaurant. Odenthal stayed there to eat his lunch and the other two purchased sandwiches and returned and sat in the cab of the tractor. The day was "awful hot" and after eating their sandwiches they sought a cool place to rest. Young laid down next to the trailer and Joe Brown laid down under the trailer in the shade. After talking a few minutes the two men fell asleep. About fifteen minutes after the end of the lunch period Odenthal returned and moved the trailer preparatory to backing it into the bakery and ran over Joe Brown. The injuries he suffered resulted in his death.

The helpers were not required to remain with the trailer during the lunch period, and they were not to unload the trailer. Their only duties immediately following the lunch period were to wait and be available when the trailer was unloaded, which would take about forty-five minutes. At the time the accident occurred Joe Brown was on a pay status with his employer. No permission had been given for

the helpers to rest under the trailers but there was no evidence that the practice was prohibited. The shade of the trailer was the nearest available shade.

The finding of the Industrial Commission (omitting citations) in the parts here material was as follows: "We further find that employee's death occurred within the period of his employment, while he was resting in the shade of employer's trailer tractor which was parked during the lunch hour, and during an enforced lull in his employment, while employee was awaiting further orders as required by employer; that employer had knowledge of such practice and custom; that employee at the time was doing something reasonably necessary for his health and comfort and was performing a service incidental to his employment; and that such action by employee did not constitute a departure from or an abandonment of his employment. We further find that while the conduct of employee in seeking the comfort of shade on a hot day under employer's truck may have been thoughtless, reckless or negligent, it did not operate to take him out of his employment and bar him or his dependents from the benefits of the Workmen's Compensation Law."

■ In reviewing this case "we have the duty of determining whether the Commission's award is supported by competent and substantial evidence upon the whole record. Const. Art. 5, § 22, V.A.M.S. This does not mean that we may substitute our own judgment on the evidence for that of the Commission. But we are authorized to decide whether the Commission could have reasonably made its findings and reached its result, upon a consideration of all of the evidence before it, and to set aside its decision if clearly contrary to the overwhelming weight of the evidence." Foster v. Aines Farm Dairy Co., Mo.Sup., 263 S.W.2d 421, 423; Lunn v. Columbian Steel Tank Co., 364 Mo. 1241, 275 S.W.2d 298.

No all-embracing definition of the phrase "arising out of and in the course of his employment" has yet been framed. Every case involving the phrase should be decided upon its own particular facts and circumstances and not by reference to some formula. Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S.W.2d 601; Finley v. St. Louis Smelting & Refining Co., 361 Mo. 142, 233 S.W.2d 725. It has been said that an injury arises "out of" the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S.W.2d 128; Foster v. Aines Farm Dairy Co., supra; Lunn v. Columbian Steel Tank Co., supra; McFarland v. St. Louis Car Co., Mo.App., 262 S.W.2d 344.

■ "In passing upon this case, it is necessary to bear in mind the fundamental difference between those causative agencies which are part and parcel of the master's business and under his control, and those which lie outside that business and beyond his control. In the former class of cases, it is quite reasonable to hold the master liable, no matter how unusual or unpreventable the accident may be. But, in the latter class of cases it seems unjust to hold the employer liable, unless the employment in some way exposes the employee to an unusual risk or injury from such agency which is not shared by the general public." Ries v. De Bord Plumbing Co., Mo.App., 186 S.W.2d 488, 489; Finley v. St. Louis Smelting & Refining Co., supra. While Joe Brown was waiting for further orders at a place where he and other helpers customarily and frequently waited on hot days during the previous summer with the knowledge of his immediate supervisor, and while not violating any rules of his employer and while being reasonably available (which constituted all the duties he was, at the time, to perform and for which he was then being paid), he was run over and killed by a trailer-truck, an instrumentality solely under the control of his employer. Upon a consideration of all the circumstances there was a causal connection between the conditions under which the work (waiting and being available) was required

to be performed and the resulting injury, and therefore the injury arose out of the employment.

It has been said that " 'an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform.' " McFarland v. St. Louis Car Co., supra [262 S.W.2d 346]. May v. Ozark Central Tel. Co., Mo.App., 272 S.W.2d 845. Respondents rely primarily on Missouri cases which state "that an injury to an employee arises 'in the course of' his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto." Wahlig v. Krenning-Schlapp Grocer Co., supra [325 Mo. 677, 29 S.W.2d 130]; Fowler v. Baalmann, Inc., 361 Mo. 204, 234 S.W.2d 11; Morgan v. Duncan, 361 Mo. 683, 236 S.W.2d 281; Foster v. Aines Farm Dairy Co., supra. While these cases all announce the above quoted general statement, none of them is sufficently similar on the facts to constitute precedent for this case.

At the time of the injury Joe Brown was performing every duty he was employed then to perform, and the accident occurred within the period of his employment. Therefore the determination of whether the injury arose in the course of his employment depends primarily upon whether he was reasonably fulfilling the duties of his employment under the particular circumstances of this case by going to sleep under the trailer. In our opinion, this depends on whether it can be said that he abandoned his employment, and we think this must be determined from all the circumstances, and not from the standpoint only of the employer but also from that of the employee.

It is the general rule that an employee who has no immediate duties except to wait does not deviate from his employment by utilizing the idle interval for rest and sleep. Larson, Workmen's Compensation Law § 21.74; Spencer v. Chesa-peake Paperboard Co., 186 Md. 522, 47 A.2d 385. The falling asleep during the lunch period, and the negligent failing to awaken at the end thereof, did not constitute an abandonment of the employment under the circumstances of this case. See Larson, Workmen's Compensation Law § 21.72, and the following cases cited therein: Corrina v. De Barbieri, 247 N.Y. 357, 160 N.E. 397; Cleveland v. Rice, 209 App. Div. 257, 204 N.Y.S. 423, affirmed 239 N.Y. 530, 147 N.E. 182; Richards v. Indianapolis Abattoir Co., 92 Conn. 274, 102 A. 604; Dixon v. Andrews, 91 N.J.L. 373, 103 A. 410, affirmed 92 N.J.L. 512, 105 A. 893.

In some jurisdictions it has been held that an employee seeking personal comfort or performing other acts incidental to his employment is not acting in the course of his employment if the method adopted is unusual or unreasonable. Weis Paper Mill Co. v. Industrial Commission, 293 Ill. 284, 127 N.E. 732; White Star Motor Coach Lines of Illinois v. Industrial Commission, 336 Ill. 117, 168 N.E. 113; Pacific Fruit Express Co. v. Industrial Commission of Arizona, 32 Ariz. 299, 258 P. 253, 55 A.L.R. 975. These cases apparently attempt to distinguish between the performance of the direct duties of the employment, which are always in the course of employment regardless of the method chosen, Larson, Workmen's Compensation Law § 21.81, and the performance of acts "incidental to the employment," such as quenching thirst, relieving hunger and protecting oneself from excessive cold and heat. However, the objection to making a distinction on this basis alone is that it improperly injects the element of negligence. We believe the proper test, and the one intended by the general statement set forth in the Missouri cases previously cited and relied upon by respondents, is whether the acts engaged in by the employee at the time of his injury constituted an abandonment of his employment. Danger alone should not disqualify the activity if it is a part of the employment. But, if the method chosen is so unreasonable that to a rational mind

upon a consideration of all the circumstances, it could not be considered a part of the employment, the danger so encountered is not an incident of the employment because the activity itself is not. The Supreme Court of Illinois has in effect stated that this is the intent of the above cited Illinois cases. In Wabash R. Co. v. Industrial Commission, 360 Ill. 92, 195 N.E. 526, 528, a railroad employee was injured when he sought shelter from a rainstorm under a railroad boxcar when he could have gone inside the car. The defense was that the employee voluntarily assumed an unusual and unnecessarily dangerous place for shelter. The injury was held to be compensable, and in the course of the opinion it was stated: "Cases such as Weis Paper Mill Co. v. Industrial Commission, 293 Ill. 284, 127 N.E. 732, have no application to this case because they are predicated upon conduct [of the employee] in violation of known rules and upon the complete withdrawal of the workman from his course of employment." See also an informative and interesting criticism in Larson, Workmen's Compensation Law § 21.71, of the reasoning and the result reached in the Arizona case cited above and relied on by respondents.

■■ There can be no fixed rule that will fit all cases in determining when an act of an employee constitutes an abandonment of his employment. But we must distinguish between negligence in the manner of the performance of duties, and the performance of activity incidental to the employment in such an unreasonably dangerous method so as to constitute an abandonment of the employment. In this case the manner of performing the duty of waiting constituted negligence, but regardless of how heedlessly it was performed, it was not, under the circumstances, wholly disassociated from and foreign to the employment. When we take into consideration that the day was "awful hot," that the helpers had rested beneath the trailers during the previous summer on hot days, that the shade from the trailer was the nearest available shade, that while waiting it was all right for Joe Brown to rest and sleep, that he was violating no express orders or rules of his employer, that the employee had not gone off on a personal venture of his own and that the waiting was for the employer's benefit, we must reach the conclusion that Joe Brown, while admittedly negligent, had not abandoned his employment.

■ The finding of the Commission that the accident occurred in the course of his employment is supported by competent and substantial evidence on the whole record. This conclusion is consistent with the majority of the cases from other jurisdictions with somewhat similar factual situations. Corrina v. De Barbieri, 247 N.Y. 357, 160 N.E. 397 (A teamster went to sleep on the wagon seat while on a ferry but failed to awaken at the end of the crossing and was thrown from the seat and killed when the horses started); Cleveland v. Rice, 209 App.Div. 257, 204 N.Y.S. 423, affirmed 239 N.Y. 530, 147 N.E. 182 (The employee was thrown from a cutter and the horse ran away. The employee then sat in the snow to await a ride and fell asleep. His foot was frozen and required amputation); Richards v. Indianapolis Abattoir Co., 92 Conn. 274, 102 A. 604 (An employee fell asleep beside an elevator while waiting for an opportunity to use it and his clothes caught on fire because he was too close to a boiler); Dixon v. Andrews, 91 N.J.L. 373, 103 A. 410, affirmed 92 N.J.L. 512, 105 A. 893 (A driver of wagon went to sleep on the seat and was crushed between the seat and the roof of a shed under which the team was standing); Allen v. Columbus Mining Co., 207 Ky. 183, 268 S.W. 1073 (The night operator of a generator went to a neighboring building of his employer to get warm before an open fire he had built for that purpose and went to sleep so near the fire that his clothing caught fire); Northwestern Iron Co. v. Industrial Commission, 160 Wis. 633, 152 N.W. 416 (An employee was to unload cars which would arrive every fifteen minutes and he lay down behind one to get warm and was injured by the next car); Rafferty v. Dairymen's League Co-op. Ass'n Inc., 200 A. 493, 16 N.J.M.

363 (A public relations employee went to sleep in his car after a banquet with the car parked on a steep incline and it rolled into a river and the employee drowned); United Employers Casualty Co. v. Barker, Tex.Civ.App., 148 S.W.2d 260 (When eight trucks in a convoy stopped all the drivers but one got under the trucks to rest in the shade. Thirty minutes later the one driver started his truck and ran over another driver who was asleep under the truck).

· As previously noted, Flora Hampton was a claimant. She presented evidence which tended to show that she was the illegitimate daughter of the deceased and Clara Hampton, that she was recognized as such by him, and that he regularly contributed to her support. Although the claims of appellants Hampton and Brown were heard together, the "Award on Hearing" made by the Referee and the "Final Award" entered by the Industrial Commission make absolutely no reference to appellant Hampton, even in the captions. In the "Additional Findings of Fact and Conclusions of Law" entered by the Commission it is stated: "We further find that deceased employee left surviving him as his only total dependent his widow, * * *." Only by implication does this constitute a determination that appellant Hampton was not a total dependent.

Assuming that the finding as to appellant Brown constituted a finding as to appellant Hampton, we cannot possibly determine if the conclusion reached was based· upon a correct application of rules of law to facts supported by competent and substantial evidence, and such a determination is a necessary part of the judicial review provided by the Workmen's Compensation Act. Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136. However, if the Commission found as a matter of fact that appellant Hampton was the illegitimate daughter of Joe Brown, if she were then not eligible in any event to receive any part of the death benefit provided for by the Workmen's Compensation Act, no useful purpose would be served in remanding this case to the ·Commission.

Section 287.240 RSMo 1949, V.A.M.S., provides that the word "dependent" shall mean "a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or part, upon his [the employee's] wages at the time of the injury." It is then provided that certain described persons shall be conclusively presumed to be totally dependent for support upon a deceased employee. Therefore, there are two classes of "total dependents." The first class consists of relatives by blood or marriage who are ·in fact actually dependent upon the wages of the deceased employee for support "in whole," and the second class consists of those who· are conclusively presumed to be "totally dependent." Masters v. Southwestern Greyhound Lines, Mo. App., 205 S.W.2d 882. Those of the second class receive the death benefit "to the exclusion" of those of the first class.

There is no contention that appellant Brown is not · a member of the second class of total dependents. However, paragraph 4(b) of the above section provides that those of the second class also include "A * * * child * * * whether legitimate or illegitimate, under the age of eighteen years" dependent upon "the parent legally liable for such support or with whom he is living at the time of the death of such parent." Appellant Hampton is below the age of eighteen years, but there is no evidence that at the time of the death of Joe Brown she was living with him, or that she ever did. It is not contended that there is any common law liability on her father to support her. Therefore, if she is entitled to be conclusively presumed· to be a total dependent, it must be because at the time of his death Joe Brown was "legally liable" for her support by reason of some statutory obligation. Section 559.350 RSMo 1949, V.A.M.S., now purports to make it a criminal offense for the father to fail, without good cause, to provide adequate food, clothing, lodging, medical or surgical attention for his illegitimate child below the age of sixteen years whether or not the father has the care and custody of such child. Laws

of Missouri, 1953, page 424. But this statute as now worded was not in effect at the time of the death of Joe Brown, and the interest, if any, of appellant Hampton is determined as of the date of the death of her father. Masters v. Southwestern Greyhound Lines, supra. The statute then in effect did not make it a crime for a father to fail to support his illegitimate child unless the father had the "legal care and custody" of the child. State v. White, 363 Mo. 83, 248 S.W.2d 841; Nelson v. Thompson, Mo.App., 253 S.W.2d 516. There is no evidence in the record from which it could be concluded that Joe Brown had the legal care and custody of appellant Hampton. Therefore she cannot be a member of the second class of ·total dependents.

The death benefit in this case is payable to the widow to the exclusion of appellant Hampton, but it is payable in weekly installments, in this case 378, and in the event the widow dies or remarries, payment of the death benefit to her shall cease and the unpaid remainder shall be paid to the "other total dependents."

Whatever may have been the rule at common law concerning the right of an illegitimate child to be a dependent of its father, such a child is not disqualified under our Workmen's Compensation Law from showing that he is in fact "dependent for support" upon the wages of the father at the time of his death. Section 287.-240(4) RSMo 1949, V.A.M.S.; Henderson v. National Bearing Division, Mo.App., 267 S.W.2d 349. Whether or not appellant Hampton can qualify as an "other total dependent" depends upon the findings of. fact, to be made by the Commission. The statutory provisions governing the procedure of the Commission "contemplate an unequivocal affirmative finding as to what the facts are." Michler v. Krey Packing Co., supra [363 Mo. 707, 253 S.W.2d 143]. Although her claim is of a contingent nature she had the right to assert it, Allen v. St. Louis-San Francisco R. Co., 338 Mo. 395, 90 S.W.2d 1050, 105 A.L.R. 1222; Caldwell v. J. A. Kreis &

Sons, 227 Mo.App. 127, 50 S.W.2d 728, and in the absence of any findings of fact concerning the claim of appellant Hampton, and by reason of her possible entitlement to participate in the death benefit, it is necessary that this case be remanded to the Commission so that proper findings of facts and conclusions of law pertaining to the claim of appellant Hampton can be made.

The judgment of the circuit court is reversed and the cause remanded to the circuit court with directions to remand to the Commission for further proceedings in accordance with this opinion.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the. Court.

All concur.